MARÍA LUISA MERCADO RIERA DE .BELAVAL y ADRIÁN MERCADO RIERA, peticionarios, *v.* CORTE DE DISTRITO DE PONCE, HON. RAMÓN A. GADEA PICÓ, JUEZ, demandada.

Núm. 1517.—*Sometido:* Mayo 24, 1943. *Resuelto:* Julio 14, 1943.

---

[2] Véase ante, pág. 366.

*Celestino Iriarte Miró* y *Héctor González Blanes,* abogados de María
Luisa Mercado Riera; *José A. Poventud,* abogado de Adrián Mer-
cado Riera; *Henry G. Molina,* abogado del Albacea Interventor
Mario Mercado Riera; *J. C. Santiago Matos,* abogado del Conta-
dor Partidor testamentario, Pedro M. Porrata, Interventor; *Félix
Ochoteco, Jr.,* y *Fernando Zapater,* abogados de los demás inter-
ventores.

EL JUEZ ASOCIADO SEÑOR TODD, JR., emitió la opinión del tri-
bunal.

El 29 de abril de 1938 este tribunal en la opinión emitida
en el caso de *Porrata* v. *Corte,* 53 D.P.R. 148, 155, dijo lo
siguiente:

"Todas las partes interesadas en la herencia de Mario Mercado
Montalvo deben cooperar con la corte inferior en la preparación de
un inventario con toda premura, a fin de que esta herencia dé un
paso adelante en el camino que conduce hacia su división y parti-
ción. . ."

Más de cinco años han transcurrido y la herencia de don Mario Mercado Montalvo poco o nada ha avanzado en el camino que debió haber conducido, ha tiempo, a su división y partición. ¿Razones para esta inexplicable tardanza, reñida con el ineludible deber de dar cumplimiento a los deseos expresos del testador de que sus bienes pasaran, salvo ciertos legados, a sus cuatro hijos? Aparentemente lo han sido las contiendas judiciales entre esos mismos herederos en las que a veces sencillas cuestiones legales se han complicado y dilatado innecesariamente en su resolución.

Llega a nosotros de nuevo la controversia a través de tres recursos de *certiorari* incoados por los herederos María Luisa y Adrián Mercado Riera solicitando se anulen tres resoluciones dictadas por la Corte de Distrito de Ponce el 23 de marzo de 1943 por las que decidió tres mociones que le fueron sometidas un año y cuatro meses antes, o sea en los meses de octubre y noviembre de 1941. Aun cuando se trata de tres recursos de certiorari, la cuestión fundamental envuelta en ellos es la misma, es decir, si está vigente legalmente el albaceazgo de Mario Mercado y por tanto los resolveremos en una sola opinión.

La moción objeto del recurso núm. 1516, fué radicada por los letrados Félix Ochoteco y Fernando Zapater en el expediente núm. 782 de la corte inferior, en el que Mario Mercado Riera obtuvo la expedición de cartas testamentarias como albacea. En dicha moción solicitaron que la corte fijara el justo valor de los servicios que habían prestado al albacea desde septiembre 9 de 1938 alegando ellos que la suma de $60,000 era razonable. Al ser notificados de esta moción los letrados José A. Poventud y Celestino Iriarte como abogados de los herederos Adrián Mercado y María Luisa Mercado, respectivamente, estos herederos comparecieron especialmente para solicitar se anulase y dejara sin efecto la notificación que a dichos abogados se había hecho, por haber vencido el albaceazgo en septiembre de 1939 y cualquier re-

presentación anterior de los Sres. Adrián y María Luisa Mercado por dichos letrados en el caso 782 ''no faculta a los últimos para recibir o aceptar ni a nadie para emplazarlos o notificarles'' dicha moción que es un procedimiento separado e independiente.

La moción objeto del recurso 1517 fué una radicada por los herederos Adrián y María Luisa Mercado en el mismo expediente 782, supra, solicitando de la corte ordenara a Mario Mercado Riera que entregase o pusiera a disposición de los herederos todos los bienes de la herencia por haber expirado el albaceazgo desde septiembre de 1939 y porque todos los herederos habían firmado un contrato transaccional en septiembre de 1938 a virtud del cual se habían adjudicado todos los bienes después de haberse pagado los legados hechos por el causante.

La moción objeto del recurso 1518 fué presentada por el albacea Mario Mercado Riera solicitando permiso para vender bienes muebles del caudal hereditario y para recoger ciertos fondos depositados en la corte y cobrar un cheque que tenía en su poder. Notificó a los abogados Poventud e Iriarte dicha moción y los herederos levantaron la misma cuestión legal ya mencionada en el recurso 1516.

Vistas y sometidas las tres mociones, es decir las de los herederos impugnando la notificación que se hizo a los abogados y la otra en que ellos solicitaron la entrega de los bienes, la corte inferior las declaró sin lugar. Alegando que al así actuar lo hizo en exceso de su jurisdicción e incurriendo en errores de procedimiento, los herederos Adrián y María Luisa Mercado incoaron estos recursos. Las partes han radicado extensísimos alegatos escritos en los que se plantean y discuten muy interesantes cuestiones relacionadas con la interpretación que debe darse a las disposiciones de nuestro Código Civil sobre el nombramiento, facultades y término del albacea, en relación con el alcance de las disposiciones de la Ley de Procedimientos Legales Especiales en

cuanto a la intervención judicial en dicho albaceazgo. Para la debida comprensión del problema planteado se hace necesario exponer todos los hechos envueltos en el caso. Veámoslos.

Mario Mercado Montalvo falleció en agosto 22 de 1937 bajo testamento ológrafo en el que instituyó como únicos y universales herederos a sus cuatro hijos, todos mayores de edad, María Luisa, Margarita, Adrián y Mario Mercado Riera, y nombró a este último albacea con relevación de fianza y "extendiéndole el término de un año que dice la ley a todo el término que fuese necesario para cumplir su cometido" y designó como contador a don Pedro M. Porrata. Ordenó además que se pagaran ciertos legados a sus nietos, biznietos y otras personas, que alcanzan a unos $270,000, y ciertas rentas vitalicias, prohibiendo a sus legatarios acudir a la vía judicial para su reclamación bajo penalidad de perderlos en su totalidad acreciendo su importe a los herederos. El testador no discernió facultad especial alguna al albacea. El testamento fué debidamente identificado ante la corte inferior y protocolizado.

En agosto 31 de 1937 Mario Mercado Riera inició el expediente núm. 782 ante la Corte de Distrito de Ponce sobre Cartas Testamentarias, y al día siguiente, septiembre 1 de 1937, dicha corte dictó resolución y expidió a dicho albacea sus cartas testamentarias. En septiembre 10 de 1937 la corte inferior concedió al albacea una prórroga de sesenta días para la formación del inventario de los bienes hereditarios.

En otro expediente, el núm. 802 de la corte inferior, iniciado por Pedro M. Porrata obtuvo éste en septiembre 8 de 1937 sentencia acreditativa de su autoridad como contador y en ese mismo expediente la corte le concedió una prórroga hasta septiembre 6, 1939 para cumplir sus obligaciones. Desde dicha fecha no se le ha concedido término adicional alguno.

En enero 24, 1938 el heredero Adrián Mercado Riera inició ante la corte de distrito el expediente núm. 1213 sobre

aceptación beneficiaria de la herencia y el mismo día obtuvo una resolución citando a los interesados y ordenando al albacea comparecer "con una completa relación y avalúo del activo y pasivo dejados por el causante Mario Mercado Montalvo, así como con los demás datos necesarios para la formación del inventario de los bienes del aludido finado." (La prórroga de sesenta días concedida al albacea en septiembre 10 de 1937 en el expediente núm. 782 había vencido sin que se hubiera presentado dicho inventario.) El contador Pedro M. Porrata intervino entonces en el procedimiento beneficiario solicitando se dejara sin efecto la orden de 24 de enero de 1938 requiriendo al albacea para que formulase el inventario, alegando que esa formación le correspondía al contador, y al ser denegada su moción interpuso recurso de certiorari ante esta Corte Suprema que culminó en nuestra opinión en *Porrata* v. *Corte,* supra, por la que se anuló el auto expedido dejándose en pie la resolución de la corte inferior.

No fué hasta septiembre 12 de 1938 que se radicó el inventario en el expediente núm. 1213, debido a que en septiembre 9 de 1938 los herederos otorgaron un contrato de transacción del cual se hizo formar parte dicho inventario pues éste fué aceptado como correcto por todos los herederos.

### EL CONTRATO TRANSACCIONAL

Las dos primeras cláusulas de este contrato no están directamente envueltas en este litigio, pues se refieren, la primera, a la disolución de la comunidad que existía entre los propios herederos en relación con los bienes hereditarios de su señora madre, Doña Eufemia Riera Dubocq, y la segunda, a la solución de discrepancias surgidas en relación con la Sociedad Mario Mercado e Hijos.

La cláusula tercera consta de dieciocho· párrafos, de la letra (*a*) a la (*r*) y se refieren expresamente a la herencia de don Mario Mercado Montalvo. Son muy extensas pero

han sido resumidas sustancialmente por los peticionarios en su alegato en la siguiente forma:

"Por la (a) se convino que los bienes hereditarios, con su valoración y pasivo, eran los que figuraban en el inventario autorizado por los herederos ese mismo día, cómo también los demás bienes, créditos, derechos y acciones que existan, aparezcan o puedan descubrirse en lo sucesivo, y que el inventario sería presentado a la corte de distrito de Ponce a los efectos de los procedimientos números 782 y 1213. Entre otras circunstancias, de dicho inventario resultaba el montante neto de la herencia en cuantía de $929,430.40 y en el activo un crédito de los herederos contra la entidad Mario Mercado e Hijos por $413,064.63.

"Por la (b), los herederos adjudicaron al albacea lo suficiente de ese crédito de $413,064.63, para atender al pago de la contribución de herencia, a las deudas vencidas, a las cargas testamentarias y/o legados de inmediato pago, según resultaran del inventario.

"Por la (c), se estipuló que los legados serían satisfechos en su totalidad.

"Por la (d), transigióse entre los herederos y la sociedad Mario Mercado e Hijos, cierta disputa sobre la pertenencia de dineros en bancos, pasando a ser de la sucesión e incluyéndose en el activo del inventario, $256,000.

"Por la (e), se reconoció íntegro un crédito hipotecario por $78,697.23, a la heredera doña María Luisa Mercado Riera.

"Por la (f), los herederos expresamente se adjudicaron los bienes, cayendo los mismos en comunidad contractual, como sigue:

" 'Los demás bienes de la Sucesión de Don Mario Mercado Montalvo, según resulta del susodicho inventario, y los que puedan aparecer después de la pertenencia del causante, se entenderán y quedan adjudicados por partes iguales entre los cuatro herederos Don Mario, Doña Margarita, Don Adrián y Doña María-Luisa, de apellidos Mercado y Riera, tratando los herederos en todo momento de evitar la continuación de la comunidad.'

"El interés de un 10 por ciento que tenía el testador en el capital social de la entidad Mario Mercado e Hijos, también había quedado adjudicado por la cláusula 2da., apartado 'I', del mismo contrato, 'en la proporción de 2.50 por ciento para cada uno de los cuatro herederos.'

"Por la (g), se estipuló que el albacea debería rendir a los demás herederos cuenta final de los frutos, rentas y productos, o cualesquiera otras accesiones de los bienes relictos, dentro de un término impe-

rativo de 'quince días siguientes' al otorgamiento del contrato transaccional, sujeta dicha cuenta a impugnación, etc.

"Por la (h), se dijo que el albacea testamentario tendría derecho a cualquier remuneración que la ley estableciera en su favor, a gastos legales y necesarios incurridos, etc., los que habría de incluir en la cuenta final que debía rendir quince días después de otorgarse el contrato.

"Por la (i), Mario Mercado Riera, como albacea entonces y en relación con la herencia dejada por Don Mario Mercado Montalvo, de nuevo conviene con los demás herederos en un término perentorio de diez días siguientes a la fecha del contrato transaccional, para hacer la notificación de defunción al Tesorero de Puerto Rico.

"Por la (j), se dijo que todos los legados, más sus intereses devengados, serían satisfechos por el albacea en la forma en que se dispone en el testamento, facultándose al entonces albacea a satisfacerlos antes de las fechas consignadas en el testamento para su pago, etc.

"Por la (k), los herederos todos se obligaron a garantizar a los acreedores eventuales, dando garantías individuales; y los que dejaran de hacerlo, se comprometieron a hipotecar entonces la valiosa propiedad 'Hacienda Feliz', dentro de tres meses del contrato y en lo que les concernía.—Adrián y María-Luisa Mercado Riera comunicaron en diciembre 7, 1938 a Mario Mercado Riera, el albacea, su disposición a hipotecar en favor de los acreedores la Hacienda Feliz.

"Por la (l), Pedro M. Porrata, en su carácter de contador testamentario, ante los pactos de los herederos anteriormente relacionados, entre ellos el de la adjudicación de los bienes por cuartas partes indivisas, convino con los herederos en que:

" '. . . teniendo en cuenta que los herederos Don Mario, Doña Margarita, Doña María Luisa y Don Adrián Mercado Riera están acordes o conformes respecto a la forma y términos de la partición o distribución de la herencia relicta por el causante Don Mario Mercado Montalvo y en cuanto a todo lo relacionado con la misma, acepta y hace suyo dicho contrato con todos sus pactos, términos y condiciones en cuanto le afecten como contador de la expresada herencia, obligándose a estar y pasar por todo ello y ajustándose al texto literal del presente contrato, sin modificación, adición o variación alguna en el cuaderno particional de la herencia a que se alude en el inciso siguiente.'

"Por la letra (m), Pedro M. Porrata se comprometió a 'tener formalizado el aludido cuaderno particional en el término de diez

días desde que se verifique el pago de la contribución hereditaria', con arreglo exclusivamente a lo consignado en el contrato transaccional, repitiéndose que no podría 'ser ampliado excepto en cuanto a la descripción de las fincas o bienes hereditarios, ni modificado, adicionado o variado en forma alguna,' conviniéndose que por el estudio, preparación y otorgamiento de ese cuaderno particional en la forma convenida en el contrato transaccional, el contador percibiría, con cargo a la herencia, $20,000.

"Por la (n), se conviene que figure como pasivo de la herencia, el pago de ciertos honorarios a los Ledos. Félix Ochoteco y Fernando Zapater Martínez, por gestiones y servicios profesionales en relación con la herencia.

"Por la letra (o), también se pacta, como baja de la herencia, otros honorarios a los Ledos. J. A. y A. S. Poventud, en pago sólo de servicios profesionales prestados en el procedimiento No. 1213, sobre aceptación beneficiaria e inventario por Adrián Mercado Riera.

"Por el inciso (p), se autorizaron mutuamente los herederos a elevar el contrato privado de transacción a escritura pública y así lo hicieron los aquí peticionarios en febrero 25, 1941, por documento público que se admitió por el tribunal *a quo* como su *exhibit* 6 en este procedimiento.

"Por la letra (q), en cuanto a todas las escrituras a otorgarse en los términos cortos y perentorios estipulados en el contrato, se reitera el pacto de que 'sus términos, pactos, cláusulas y condiciones no podrán ser modificados, adicionados o variados en forma alguna, ni tampoco podrán ampliarse en ningún sentido, excepto en cuanto a la descripción de las fincas en cada escritura que haya de otorgarse y dichos pactos, cláusulas, términos y condiciones serán siempre transcritos literalmente, tal y como han quedado aquí consignados.' "

A pesar de haberse instado el expediente Núm. 1213 sobre aceptación beneficiaria por Adrián Mercado, en ningún momento, dentro de dicho procedimiento se proveyó por la corte inferior, a instancia de parte interesada, administración judicial alguna de los bienes (Artículo 974 del Código Civil, 1930). Tampoco en el expediente Núm. 782 sobre cartas testamentarias en ningún momento se solicitó u obtuvo el nombramiento de un administrador judicial de estos bienes hereditarios los que siempre han estado, desde el falle-

cimiento del testador, en poder del coheredero Mario Mercado Riera como albacea.

De acuerdo con la letra (*g*) del contrato transaccional, supra, el término de quince días allí fijado para que el albacea radicara sus cuentas finales venció en septiembre 24 de 1938. Las rindió un año y seis meses después, o sea, en marzo 6 de 1940. Fueron impugnadas por los aquí recurrentes, objeto de vistas y recayó resolución sobre ellas en febrero 19, 1942. Ambas partes apelaron. Posteriormente el albacea rindió otras cuentas en octubre 27 de 1941, o sea el mismo día en que los recurrentes radicaron su moción solicitando que la corte ordenara al albacea entregar los bienes a todos los herederos. La coheredera Margarita Mercado Riera al ser notificada de esta moción hizo constar *que nada tenía que oponer a la misma.* Tenemos, por lo tanto, que entre los recurrentes y Margarita Mercado representan las tres cuartas partes de la herencia.

El coheredero y albacea Mario Mercado Riera contestó la moción de los peticionarios en la siguiente forma:

"2. Que en cuanto a la entrega de los bienes hereditarios por el albacea compareciente a los herederos, incluyéndose a sí mismo como uno de ellos, ha estado siempre dispuesto y deseoso de hacerlo sobre el particular en el 'Contrato Transaccional' tantas veces mencionado en la solicitud bajo contestación, en el cual se convino que un 'Cuaderno Particional' sería formalizado por don Pedro M. Porrata en su carácter de contador testamentario a tenor de los términos de dicho 'Contrato Transaccional', y que una vez otorgado por los herederos se haría la entrega del caudal hereditario de acuerdo con el mismo. Que el Contador oportunamente formalizó y entregó a los herederos dichos 'Cuaderno Particional' el cual este compareciente siempre ha estado y está dispuesto a otorgar, pero no así los herederos doña María Luisa y don Adrián.

"3. Entiende el compareciente que procede otorgar dicho Cuaderno Particional y de acuerdo con los términos del mismo adjudicar y entregar a cada heredero aquella parte de la herencia que le corresponde, sin perjuicio de cualquier reajuste que pudiera tener que hacerse una vez que queden resueltas por esta Honorable Corte las impugnaciones de los referidos herederos doña María Luisa y

don Adrián Mercado Riera a la cuenta que fué rendida por el albacea. compareciente con fecha 6 de marzo, 1940.

"4. Que no procede hacer entrega de los bienes hereditarios a los herederos o a cualquiera de ellos sin que antes de, o simultáneamente con, dicha entrega sea garantizado el pago de todas las deudas del causante así como de los legados, y siempre reteniendo suficientes fondos o haberes para responder de todas las obligaciones del albaceazgo especificadas en la cuenta suplementaria cubriendo el período de marzo 5, 1940 a octubre 23, 1941, así como los honorarios de los abogados del albacea, señores Félix Ochteco, Jr. y Fernando Zapater, y para responder del pago de los que se devenguen hasta la terminación de este procedimiento."

Como hemos dicho, no fué hasta marzo de 1943 que la corte inferior resolvió las mociones y en cuanto a la de entrega del caudal dijo, en parte, lo siguiente:

"Como se ve, y aparece repetidamente del récord, el Albacea ha estado dispuesto a entregar la herencia a sus coherederos, de suerte que, en cuanto a la entrega no hay controversia, si bien el albacea condiciona la misma al pago de las deudas y honorarios de abogado, o al afianzamiento de los mismos.

"* * * * * * *

"Nos inclinamos a creer, sin que nos parezca necesario descansar nuestra resolución en ello, que los varios incidentes establecidos dentro del presente pleito, unidos al número 1213 'Sobre Aceptación Beneficiaria de Herencia y Formación de Inventario', convirtieron la total controversia de esta sucesión en un pleito de testamentaría; por lo menos, las características esenciales de esa clase de pleitos se encuentran comprendidas y diluídas en todos los varios trámites llevados a efecto alrededor de esta herencia.

"* * * * * * *

"Nos inclinamos a creer que la expiración del año del (sic) y su prórroga por igual período que establece la ley no pone fin *ipso jure* al albaceazgo, sobre todo cuando los herederos mismos, por sus actos, han creado las circunstancias que concurren en este caso. (Véase 65 Jurisprudencia Civil, 247; 82 *Idem* 390; 86 *Idem*, 377; 93 *Idem*, 177; 111 Jurisprudencia Civil (1910), 681; Resolución General de los Registros, 3 de julio 1926 y 30 de enero 1911.) (Véanse también artículos 827 y 828 del Código Civil.)

"No obstante lo dicho, si interpretamos que don Mario Mercado Riera no es un administrador, ni albacea continuando en su cargo

por los herederos, podríamos convenir con los letrados de los herederos don Adrián y doña María Luisa que es un mandatario o apoderado de sus coherederos, ya que se confirió el encargo de pagar los legados y sus intereses devengados conforme a lo dispuesto en el testamento de su causante. Como don Mario es, además, coheredero, en cuanto al pago de deudas y legados hereditarios le fué continuada la facultad que como albacea le confirió el testador, el ordenarle que entregue incondicionalmente la herencia, sin que se le ponga en condición de cumplir su mandato, bien suministrándole los medios necesarios para pagarlos, así como los honorarios de abogado que son gastos de administración, o afianzar su pago eventual por los herederos, sería dejar el cumplimiento del contrato transaccional a la voluntad de una de las partes, cosa que la ley no sanciona. (Art. 1208 Código Civil.)''

Se pregunta el albacea en su alegato ¿qué es lo que hay en controversia entre las partes que está dando lugar a todo este litigio a pesar de que ambas partes, *aparentemente,* están deseosas de terminarlo? Nos parece que el ''aparentemente'' que hemos subrayado puede que sea el nervio de toda la controversia. Es obvio que el recurso fundamental es el núm. 1517, o sea el que se refiere a la entrega del caudal hereditario. Si los recurrentes tienen razón en éste, sus mociones en los recursos núms. 1516 y 1518 debieron haber sido declaradas con lugar.

Los recurrentes sintetizan los errores que imputan a la corte inferior en el recurso núm. 1517 en esta forma:

''La corte *a quo* incurrió en grave exceso de jurisdicción y/o serio y perjudicial error de procedimiento al determinar la subsistencia de un albaceazgo que había expirado en septiembre 1, 1939, sin haberse obtenido prórroga; y negar por ello, la entrega incondicional de bienes hereditarios a sus legítimos dueños para seguir cumpliendo la voluntad del testador.

''La corte inferior incurrió en exceso de sus facultades al dictaminar y actuar como si el caudal relicto al óbito del testador hubiera estado sujeto a una administración judicial, sin haberse instado ni decretado en momento ni en forma alguna, de acuerdo con el artículo 23 de la Ley de Procedimientos Legales Especiales (556, Cód. Enj. Civ., 1933); y al dictaminar y actuar como si un albaceazgo, en el

supuesto de no haber expirado, equivaliese a una administración judicial o juicio universal de testamentaría, en conflicto con las prescripciones legales aplicables.

"La corte de distrito asimismo actuó en exceso de sus poderes e incurrió en grave yerro procesal al negar el indiscutible derecho de que se rindan cuentas finales suplementarias a los dueños legítimos del caudal, para conocer su *status*."

Por su parte el albacea interventor alega que el procedimiento núm. 782 sobre cartas testamentarias "Es un juicio o procedimiento general de testamentaría (Probate Proceeding) en el cual la corte de distrito tiene amplia jurisdicción para resolver todas las cuestiones sobre liquidación y adjudicación del caudal hasta que sea entregado a los interesados.". Para sostener su contención hace un resumen de las disposiciones de la Ley Referente a Procedimientos Legales Especiales que transcribimos como referencia[1]

---

[1] "(1) *Designación de Establecimiento Bancario.*—Debe el albacea solicitar a la corte que designe un establecimiento bancario en que habrán de ser depositados los fondos en efectivo del caudal. Art. 587(54).

"(2) *Inventario.*—Dentro de los diez días 'de su nombramiento', deberá el albacea formar el inventario al cual comparecerán los herederos y legatarios si se hubieran 'personado en autos'. 568(35). Si hubiera disputa respecto al valor de los bienes, el juez nombrará dos peritos para hacer la valoración y terminado el inventario se entregará al secretario. 570(37).

"(3) *Pago de Deudas con Intervención de la Corte.*—Será el deber de todo albacea satisfacer las deudas legítimas del finado con intervención de los herederos o, en su defecto, de la corte de distrito. 593(60). Para ello se publicará un aviso en un periódico designado por el juez de la corte de distrito. 594(61). Si el albacea rechazare la reclamación, el acreedor podrá reclamarla en el correspondiente pleito contra la administración del caudal. Idem.

(4) *Cuentas Trimestrales.*—El albacea presentará en la corte de distrito cuentas trimestrales las que serán puestas de manifiesto en secretaría a disposición de cualesquiera de las partes. 587(54).

(5) *Cuenta Final.*—Todo albacea debe presentar a la corte una cuenta final jurada, acompañada de los recibos y resguardos correspondientes, la que se pondrá de manifiesto para su inspección y se citará a todas las partes interesadas en el caudal a fin de que puedan presenciar la liquidación final. 588(55). Si fueran impugnadas se celebrarán vistas, 589(56), la corte dictará auto definitivo haciendo modificaciones y alteraciones con cargo al albacea, cuyo auto será apelable. 590(57). Cualquier heredero o legatario puede pedir al tribunal para que obligue al albacea a rendir su cuenta final, 591(58), y el auto definitivo dispondrá la adjudicación del sobrante que resultare, en dinero o fincas, entre las personas

 La cuestión fundamental, nervio de toda la controversia, es si el albaceazgo en este caso ha terminado o no a virtud del vencimiento del término que el testador y la ley concedieron al albacea o si los herederos, por sus actuaciones de acuerdo con el contrato transaccional pudieron prorrogar dicho término.

El testador proveyó que le extendía al albacea el término de un año que dice la ley "a todo el término que fuese necesario para cumplir su cometido." Los artículos 826 y 827 del Código Civil (Ed. 1930) disponen lo· siguiente:

"Artículo 826.—El albacea a quien el testador no haya fijado plazo, deberá cumplir su encargo dentro de un año contado desde su aceptación, o desde que terminen los litigios que se promovieren sobre la validez o nulidad del testamento o de alguna de sus disposiciones."

"Artículo 827.—Si el testador quisiere ampliar el plazo legal, deberá señalar expresamente el de la prórroga. Si no lo hubiese señalado, se entenderá prorrogado el plazo por un año."

La frase "a todo el término que fuese necesario para cumplir su cometido" usada por el testador, no señala plazo específico de prórroga y, de acuerdo con la jurisprudencia y los comentaristas del Código Civil, debe entenderse que cu-

con derecho a ello, después de satisfechas las deudas del finado y cubiertos los gastos de administración. 592(59).

(6) *Remuneración.*—Todo albacea tendrá derecho a una remuneración especificada y también dispondrá el juez que se abonen al administrador o albacea los gastos indispensables que ocasione la administración, incluso el costo de los anuncios, publicaciones que la ley prescriba, la conservación y guarda de los bienes, consulta de abogado y gastos de viaje. 586(53).

(7) *División y Partición.*—Cuando un albacea tuviese en su poder bienes bastantes para satisfacer las deudas y gastos de administración, deberá pedir a la corte de distrito el nombramiento de un contador para practicar la división de la herencia, si no lo hubiera nombrado el testador. 600(67). La aceptación del nombramiento de comisionado dará derecho a todo interesado a solicitar de la corte le ordene cumplir su cargo dentro de un término razonable. 602(69). Si hubiere oposición al informe del comisionado cualquiera parte podrá pedir vista 'ante la corte de los autos'. 603(70). La corte aprobará la divisoria haciendo en ella 'las modificaciones legales que estime oportunas,' y una vez dictado el auto definitivo, entonces se pondrá a los herederos en posesión de la porción de bienes que respectivamente les hubiera sido adjudicada. 604(71).

bre solamente el año adicional señalado por el artículo 827, supra. Interpretando el artículo 905 del Código Civil Español, equivalente al 827 nuestro, el Tribunal Supremo de España en sentencia de noviembre 24, 1906, 105 J. C. 812, 819, dijo que ". . . dados los términos del artículo 905 del Código, el testador que quiere ampliar el plazo del albaceazgo debe señalar expresamente el término de la prórroga, sin que, por lo tanto, sea admisible que pueda autorizar una prórroga indefinida; cuando así no lo hace, la prórroga se entiende sólo por el plazo de un año, a tenor del claro precepto del expresado artículo . . .". Al mismo efecto véase Sánchez Román, D. C. (vol. 11) 1450; 6 Manresa, Comentarios al Código Civil, 736.

Dictaminando sobre una consulta que envolvía esta misma cuestión, el renombrado civilista español, don Antonio Maura, se expresó en esta forma:

". . . El artículo 905 dispone que si el testador quisiere ampliar el plazo legal (un año, según el 904) deberá señalar expresamente el de la prórroga. Si no lo hubiese señalado, se entenderá prorrogado el plazo por un año. Un segundo párrafo del mismo artículo permite al Juez conceder otra prórroga por el tiempo necesario, según las circunstancias del caso; mas no hay en los antecedentes de la consulta noticia, ni trazas, de haber obtenido, ni aun solicitado, por los Sres. D. Prudencio y D. Félix prórroga alguna judicial. También el art. 906 dispone que los herederos y legatarios podrán, de común acuerdo, prorrogar el plazo del albaceazgo por el tiempo que crean necesario; pero si el acuerdo fuese sólo por mayoría, la prórroga no podrá exceder de un año. Vistos los papeles, parece indudable que jamás hubo tal deliberación del heredero con los legatarios, ni siquiera intentó tenerla; de modo que el plazo definido *ex lege* por el art. 905 no fué prorrogado, en ninguna de las fórmulas legítimas.

"* * * * * * *

"(B) Puede sostenerse con firmeza y *como verdad innegable* que por lapso del plazo de máxima duración del cargo terminó *ex lege* a los dos años de la aceptación el albaceazgo de los Sres. D. Prudencio y don Félix; correspondiéndole al heredero único del causante prose-

guir la ejecución de la voluntad del testador, según el art. 911 del Código civil. . ." (Bastardillas nuestras.) 4 Maura, Dictámenes, 308, 309 y 351.

Resolvemos, por tanto, que habiendo obtenido Mario Mercado Riera sus cartas testamentarias como albacea en septiembre 1 de 1937, el término de un año que le concedía el art. 826, supra, venció el 1 de septiembre de 1938 y que el año adicional que le concedió el testador de acuerdo con el art. 827, supra, venció el 1 de septiembre de 1939, fecha esta última en que terminó el albaceazgo de acuerdo con el artículo 832 del Código Civil preceptivo de que "Termina el albaceazgo por la muerte, imposibilidad, renuncia o remoción del albacea, y *por el lapso del término señalado por el testador, por la ley, y en su caso, por los interesados*" (bastardillas nuestras), ya que nada hay en el récord que pueda hacer aplicable el artículo 828 del mismo cuerpo legal que dispone que: *"Los herederos y legatarios pueden de común acuerdo,* prorrogar el plazo del albaceazgo por el tiempo que crean necesario; pero si el acuerdo fuese sólo por mayoría, la prórroga no podrá exceder de un año".

Erró, por tanto, la corte inferior al resolver que la expiración del término de dos años señalados por el Código Civil a un caso como el de autos "no pone fin al albaceazgo". Añade, sin embargo, la corte: "Sobre todo cuando los herederos mismos, por sus actos, han creado las circunstancias que concurren en este caso." Aun cuando no se especifican cuáles son los actos a que se refiere la corte, suponemos se refieren al contrato transaccional otorgado por los herederos en septiembre 9 de 1938. Empero, no podemos pasar por alto lo dispuesto por el art. 828 del Código Civil, supra, y no habiendo los legatarios intervenido en forma alguna en dicho contrato transaccional no puede éste por interpretación judicial tener el efecto de prorrogar el término del albacea. Por el contrario, si nos fijamos en los plazos cortos y precisos fijados por los herederos para que el albacea cumpliera

con sus deberes como tal, no cabe interpretarlo como una prórroga indefinida según pretende el albacea. Además, a la fecha en que se otorgó dicho contrato transaccional, 9 de septiembre de 1938, aun le quedaba al albacea un año para el ejercicio de su cargo que no vencía hasta el 1 de septiembre de 1939. No podemos lógicamente interpretar el contrato como una prórroga indefinida e indeterminada del albaceazgo.

Es cierto que los aquí peticionarios permitieron que el albacea continuara actuando después de vencido su término en septiembre de 1939, hasta el mes de octubre de 1941 en que radicaron su petición sobre entrega de bienes hereditarios, pero no habiéndose demostrado acuerdo alguno entre los herederos y legatarios y no constituyendo los herederos una mayoría, esa actitud no puede tampoco interpretarse como equivalente a la concesión de cualquiera de las prórrogas prescritas en el art. 828, supra.

La jurisprudencia del Tribunal Supremo de España, citada por la corte inferior en su resolución, no es aplicable a los hechos de este caso. Las sentencias de febrero 16, 1889 y octubre 6, 1897, 65 J. C. 247 y 82 J. C. 390, interpretan la Ley núm. 6, tít. 10, de la Partida 6ª. y no los preceptos del Código Civil, y así, en la última de dichas sentencias se dice: " . . . la sentencia no infringe ninguno de los preceptos y doctrinas citadas en el motivo primero, porque ni la ley 28, párrafo 2º, título 3º del Código Justiniano . . . supuesto que sea extensivo a los albaceazgos en general; ni la 6ª., título 1º, Partida 6ª. . . . *establecen la caducidad ipso jure que ha sancionado el artículo 910 del Código Civil.*" 82 J. C. 393. (Bastardillas nuestras.)

En cuanto a las citas de 86 J. C. 373; 93 J. C. 177; 171 J. C. 769 y 120 J. C. 280, todos estos casos se distinguen del de autos por el hecho de que en aquéllos los herederos habían confirmado o ratificado actuaciones del albacea efectuadas *después* del vencimiento del albaceazgo.

El artículo 910 del Código Civil Español citado, corresponde al artículo 832 del nuestro que prescribe que "termina el albaceazgo por la muerte, imposibilidad, renuncia o remoción del albacea, y por el lapso del término señalado por el testador, por la Ley, y en su caso, por los interesados," disponiendo el artículo siguiente, 833, que en los casos del artículo anterior "corresponderá a los herederos la ejecución de la voluntad del testador." Comentando Manresa el art. 910 y la sentencia de 6 de octubre de 1897, supra, dice:

"Transcurrido el plazo fijado por el testador o por la ley, y en su caso la prórroga otorgada por el mismo testador, por los herederos y legatarios ó por la autoridad judicial, caduca *ipso jure* el albaceazgo, *aunque no haya terminado su gestión.*" 6 Manresa, Comentarios al Código Civil (1932), 753.

Y a las páginas 738, 739, dice:

"Expirado el plazo y la prórroga o prórrogas en su caso, termina de derecho, sin necesidad de sentencia ni acto especial alguno, el albaceazgo testamentario, como declara el art. 910, y a los herederos corresponde, según el 911, la ejecución de la voluntad del testador.
"* * * * * * *
"Si el albacea no quiere dar por extinguida su misión al expirar el plazo ni hacer entrega de los bienes, si los tuviere, ni rendir cuentas, *puede ser compelido a ello judicialmente.*" (Bastardillas nuestras.)

Tampoco puede sostenerse que esté vigente el término del contador y que la partición deba hacerse de acuerdo con el cuaderno por él preparado. Como hemos dicho, al contador en este caso la corte inferior le concedió una prórroga hasta septiembre 6 de 1939 para cumplir sus obligaciones. No ha solicitado ni se le ha concedido término adicional alguno. Bajo estas circunstancias la Dirección General de los Registros ha resuelto que:

"Considerando, en su consecuencia, que es evidente el deber del Partidor de desempeñar su cometido dentro de un plazo, y que no fijado éste expresamente por legislador, ha de suplirse este vacío, aplicando por analogía el concedido a los albaceas, o sea el de un

año, entendiéndose que el transcurso de dicho plazo sin haber hecho uso de su facultad constituye una renuncia tácita de la misma;

"Considerando que habiendo transcurrido mucho más de un año desde el fallecimiento del testador hasta que los herederos otorgaron la escritura de partición que ha motivado el presente recurso, no se ha infringido el art. 1058, ya que, con arreglo al 911, aplicable también por analogía, si el albacea deja pasar el término señalado por el testador o por la Ley sin cumplir su encargo, corresponde a los herederos la ejecución de la voluntad del testador;". 96 J. C. 599, 601, 602.

En su resolución la corte inferior va rechazando una tras otra distintas hipótesis en cuanto al carácter con que está actuando Mario Mercado Riera y, después de descartar las que se refieren a administrador o albacea, dice que podría concurrir con los peticionarios en que "es un mandatario o apoderado de sus coherederos" pero que "como don Mario es, además, coheredero, en cuanto al pago de deudas y legados le fué continuada la facultad que como albacea le confirió el testador." No estamos conformes. Asumiendo que al expirar su término como albacea Mario Mercado Riera continuó como mandatario de los demás coherederos, es obvio que sus mandantes podían dar por terminado el mandato en cualquier tiempo, artículo 1624 del Código Civil, y que de acuerdo con el artículo 1611 "Todo mandatario está obligado a dar cuenta de sus operaciones y a abonar al mandante cuanto haya recibido en virtud del mandato, aun cuando lo recibido no se debiera al segundo." Repetimos que las facultades concedidas al albacea por el contrato transaccional lo fueron un año antes de vencer su término y que los plazos cortos y precisos allí fijados no conllevan idea alguna de prorrogar dicho término, sino por el contrario de que los bienes hereditarios pasaran a poder de los herederos. Ellos se adjudicaron dichos bienes (inciso (f) contrato transaccional) y el contador partidor, teniendo en cuenta esto y además que los herederos estaban "acordes y conformes respecto a la forma y términos de la partición o distribución de la heren-

cia," (inciso (*l*) contrato transaccional), también aceptó dicho contrato. Ni el albacea ni el contador cumplieron, ni dentro de los plazos fijados, ni posteriormente con los términos del contrato. Resolver que obligar al ex albacea a hacer entrega de los bienes "sería dejar el cumplimiento del contrato transaccional a la voluntad de una de las partes" como lo hizo la corte inferior, no está justificado por los hechos del caso. Por el contrario, bien puede sostenerse que, vencido el término del albaceazgo y vencidos los términos fijados en el contrato transaccional, no puede dejarse a uno de los herederos en posesión de todo el caudal hereditario cuando por ley corresponde a todos los herederos la ejecución de la voluntad del testador. Artículo 833, Código Civil, supra.

■ Habiendo llegado a la conclusión de que el término del albaceazgo caducó por ley en septiembre de 1939, réstanos por resolver si, como sostiene la corte inferior, todos los incidentes de este caso "convirtieron la total controversia de esta sucesión en un pleito de testamentaría". Ésta es la misma posición legal adoptada por la representación del ex albacea en su alegato al hacer referencia y comentar los artículos de la Ley Referente a Procedimientos Legales Especiales, supra, y al sostener que los bienes de la herencia están en *custodia legis* ya que el procedimiento sobre expedición de cartas testamentarias convirtió todo el procedimiento en uno *in rem*, como sucede en los Estados Unidos en los *"probate proceedings"*.

La cuestión no es nueva y ya ha sido resuelta por esta Corte Suprema. En el caso de *Aponte & Sobrino* v. *Sucn. Pérez*, 48 D.P.R. 449, a las páginas 453 y 454 se dijo:

"Arguyen los demandados que la firma demandante admite en la demanda que Jenaro Cautiño Insúa es albacea de don José Pérez Llera, alegando que dicho albacea fué requerido de pago por la demandante, sin que hasta la fecha haya satisfecho la suma reclamada. Es verdad que existe esta alegación en la demanda. *Pero ello no quiere decir que por el hecho de haberse designado un*

*albacea los bienes de la herencia se encuentren en administración judicial.* El albacea de que habla nuestro derecho civil no está colocado en las mismas condiciones que generalmente prevalecen dentro del sistema legal americano. Aquí como allá el albacea deriva su autoridad de la voluntad del testador, del testamento que lo nombre; pero entre nosotros cuando el testador no determina especialmente sus facultades, éstas están limitadas por el artículo 824 del Código Civil, según el cual únicamente podrá:

" '1. Disponer y pagar los sufragios y el funeral del testador con arreglo a lo dispuesto por él en su testamento; y en su defecto, según la costumbre del pueblo.

'2. Satisfacer los legados que consistan en metálico, con el conocimiento y beneplácito del heredero.

'3. Vigilar sobre la ejecución de todo lo demás ordenado en el testamento, y sostener, siendo justo, su validez en juicio y fuera de él.

'4. Tomar las precauciones necesarias para la conservación y custodia de los bienes con intervención de los herederos presentes.'

"Comentando el artículo 902 del Código Civil español, equivalente al artículo 824 de nuestro código, se expresa así el Sr. Manresa:

" 'El albacea vigila por la fiel ejecución de las disposiciones testamentarias, cuyo cumplimiento no le está directamente encomendado. Pero, obsérvese bien, por muy importante que sea esta función y la de la defensa del testamento, el albacea, con arreglo a este número del art. 902 no representa la herencia. Si se ataca el testamento, él tiene personalidad para ser demandado y defender su validez o la de alguna de sus cláusulas; si se quebranta alguna disposición o no se ejecuta, él tiene personalidad para demandar a los mismos herederos y compelerles a la ejecución y al respeto de cuanto el testador ordenó; *mas ni le compete administrar en absoluto, ni pagar deudas,* ni satisfacer más legados que los que consistan en metálico, ni practicar las operaciones particionales, ni nada más que lo que taxativamente determinan los números 3º y 4º del art. 902, a no ser que el testador le hubiere facultado para ello.' 6 Manresa, 749.

"En el presente caso únicamente sabemos que los demandantes han aceptado que Jenaro Cautiño fué nombrado albacea de don José Pérez Llera y esto no es bastante para colocar los bienes en *custodia legis.*" (Bastardillas nuestras.)

Y en el de *Pérez* v. *Sucrs. de M. Pérez & Co.,* 41 D.P.R. 852:

". . . En Estados Unidos la palabra 'Heredero' es por lo general aplicable solamente a aquéllos que reciben los inmuebles. Allí los administradores y albaceas representan ampliamente al finado, no sólo para el ajuste de sus deudas y asuntos similares, sino también para el cobro y distribución de los bienes muebles pertenecientes a él. En Puerto Rico, el principio de sucesión universal, en forma modificada, es aplicable, y los herederos representan al finado desde el momento de su muerte, teniendo derecho a todos sus bienes. La administración en Puerto Rico es para fines limitados, y cesa al hacerse una declaratoria de herederos. *Pérez* v. *Zeda*, 35 D.P.R. 329."

Ya anteriormente se había resuelto que "Cuando del testamento no aparece claramente que el testador confirió al albacea la facultad de vender bienes para el pago de deudas, si el albaeca desea ejercitar tal facultad, debe colocarse en las condiciones de un administrador judicial mediante gestiones ajustadas a derecho". *Suau, Ex parte,* 27 D.P.R. 975, 6 (sumario); habiéndose dicho en el de *Sucn. Pelliccia* v. *Corte,* 36 D.P.R. 654, 656 que: "El cargo de albacea, si no se dispone de otro modo en el testamento, responde solamente a una situación provisional transitoria, que se presenta desde la muerte del testador y comprende ciertas medidas que se han de tomar en relación con los bienes, entretanto se acepte la herencia por los herederos y no haya oposición entre ellos por la división del caudal." Véase además *Crehore* v. *El Registrador de Guayama,* 22 D.P.R. 32, en el que se dijo expresamente que: "El albacea no es el administrador de la herencia pues a menos que el testador le haya conferido ese carácter, no tiene otras facultades que las determinadas en los artículos 876 y 877 del Código Civil." (823 y 824, Código Civil, 1930.)

Si los herederos en el caso de autos ya habían aceptado la herencia y acordado su adjudicación, de acuerdo con el contrato transaccional de septiembre 9 de 1938, el hecho de no haber cumplido con sus términos el albacea y el contador partidor no debe prevalecer para sostener, varios años después, que los herederos no están de acuerdo en cuanto a la forma en

que deben adjudicarse los bienes. Tampoco la apelación pendiente en cuanto a la resolución del Juez Sepúlveda aprobando la cuenta final sometida por el albacea pues, aparentemente, de acuerdo con dicho contrato (inciso (*g*)), dicha cuenta se contraía solamente a "los frutos, rentas y productos o cualesquiera otras accesiones de los bienes relictos . . . y el saldo que resulte será distribuído por·cuartas partes entre los susodichos cuatro herederos del causante." Decimos "aparentemente" pues según admiten los peticionarios en su alegato "el interés de aclarar este extremo constituye, entre otros, uno de los motivos de dicha apelación."

Es cierto que en *Porrata* v. *Corte,* supra, dijimos que "puede que haya llegado el momento de que la Asamblea Legislativa armonice, mediante la redacción de un estatuto completo que cubra el campo especial que está ante nos, los principios españoles y americanos que rigen toda esta importante fase del derecho de sucesión." Empero, la Legislatura no lo ha hecho y, en ausencia de un nuevo estatuto, somos de opinión que, de acuerdo con los hechos concurrentes en este caso, no puede sostenerse que las disposiciones positivas de nuestro Código Civil sobre el nombramiento, deberes y término de un albacea puedan considerarse variadas o modificadas en cuanto a su alcance como derecho substantivo por las disposiciones procesales de la Ley Referente a Procedimientos Legales Especiales. Ni dentro del procedimiento sobre cartas testamentarias, ni en el de aceptación beneficiaria, se constituyó en momento alguno la herencia de Mario Mercado Montalvo en administración judicial, y habiendo expirado el albaceazgo corresponde a los herederos dar cumplimiento a lo ordenado por el testador en todo aquello en que no lo haya hecho el albacea.

A nuestro juicio, la corte inferior se excedió en su jurisdicción al resolver que los bienes hereditarios estaban bajo *custodia legis,* sin haberse decretado administración judicial alguna, *y procede, por tanto, en el recurso núm. 1517 anular*

*su resolución de marzo 24, 1943, debiendo dictarse otra or-*
*denando al ex albacea Mario Mercado Riera que proceda a*
*entregar dichos bienes a todos los herederos de Mario Mer-*
*cado Montalvo, en cumplimiento del contrato transaccional de*
*septiembre 9 de 1938, y asimismo rendir una cuenta suple-*
*mentaria desde octubre 27 de 1941 en que rindió la anterior,*
*hasta la fecha de dicha entrega, para todo lo cual se le con-*
*cede un término de sesenta días.*

*Como consecuencia de la anterior conclusión, se anula la*
*resolución dictada por la corte inferior el 23 de marzo de*
*1943, objeto del recurso núm. 1516, por no proceder dentro*
*del expediente núm. 782 sobre cartas testamentarias la noti-*
*ficación a los abogados de María Luisa y Adrián Mercado de*
*la moción de los Lics. Ochoteco y Zapater, la cual debió no-*
*tificarse a los herederos directamente en el procedimiento*
*apropiado y no como parte del mencionado expediente; y asi-*
*mismo se anula la resolución dictada por la corte inferior el*
*24 de marzo de 1943 objeto del recurso núm. 1518, pues ha-*
*biendo terminado el albaceazgo no procedía notificar a los*
*abogados de los herederos María Luisa y Adrián Mercado*
*dentro del expediente núm. 782 la moción del ex albacea so-*
*licitando la entrega de ciertos fondos depositados en la corte.*

El Juez Presidente Sr. Del Toro no intervino.

EN MOCION PARA ENMENDAR O MODIFICAR LA ANTERIOR OPINION
Julio 31, 1943.

1. APELACIÓN—REVISIÓN — DISCRECIÓN DE LA CORTE INFERIOR — PRÓRROGAS DE
TÉRMINOS.—La concesión de prórrogas que en total suman un año para radi-
car alegatos en relación con una moción impugnando una citación no cons-
tituye un uso razonable de la discreción judicial.
2. MOCIONES—RESOLUCIÓN DE LAS MISMAS—TÉRMINO PARA ELLO.—El hecho de
que una parte dilate la presentación de su alegato en relación con una de
tres mociones sometidas a la consideración de un tribunal, no justifica al
tribunal a dilatar la resolución de todas las mociones durante más de un
año.

EL JUEZ ASOCIADO SEÑOR TODD, JR., emitió la opinión del tri-
bunal.

En nuestra opinión dictada en estos casos dijimos que la

corte inferior resolvió las tres mociones objeto de estos recursos un año y cuatro meses después de haberle sido sometidas dichas mociones. Esto era lo que aparecía del expediente elevado a nuestra consideración a virtud de los autos de *certiorari* expedidos, y estábamos plenamente justificados en nuestra aseveración.

El Juez recurrido ha radicado una moción haciendo constar que la última de las tres mociones "quedó definitivamente sometida a la corte el día 18 de diciembre de 1942 a virtud del alegato de los peticionarios en este caso, radicado por sus abogados Lics. Iriarte Miró, González Blanes y José A. Poventud", lo que acredita con certificación al efecto del secretario interino de la corte inferior, y solicita que se enmiende o modifique la opinión emitida por esta Corte para hacerla harmónica con la realidad, o sea "que el juez de distrito no se tomó un año y tres meses para resolver el caso . . . sino tres meses".

Admitimos que al señalar el largo lapso de tiempo transcurrido en la resolución de las mociones por la corte inferior lo hicimos expresamente para llamar la atención a dicho hecho, aun cuando nos abstuvimos de hacer comentario alguno sobre el particular. Ahora bien, el hecho de que una parte dilate la presentación de su alegato en relación con una de tres mociones sometidas no justifica que la corte dilate la resolución de todas las mociones durante más de un año. Dentro de su discreción la corte puede conceder un plazo o prórroga razonable para radicar alegatos, pero no está obligada a hacerlo ni debe dilatar la resolución de los casos sometidos a su consideración porque los abogados no cumplan con su deber de ilustrar a la corte dentro de un lapso de tiempo razonable. Conceder prórrogas que en total suman un año, para radicar alegatos en relación con una moción impugnando una citación, difícilmente puede sostenerse que sea un uso razonable de la discreción judicial.

Se declara con lugar en parte la moción del juez recurrido.

Como aclaración a nuestra opinión principal, se hace constar que en cuanto a una de las mociones la corte inferior sólo tardó tres meses en resolverla.

Los Jueces Presidente Sr. Del Toro y Asociado Sr. Travieso no intervinieron.