EL PUEBLO DE PUERTO RICO, demandante y apelado, v. NICOLÁS DEL VALLE, acusado y apelante.

Núm. 9014.—*Sometido:* Febrero 3, 1942. *Resuelto:* Marzo 25, 1942.

*Enrique Báez García,* abogado del apelante; *Hon. Procurador General George A. Malcolm, R. A. Gómez, Fiscal del Tribunal Supremo* y *Luis Negrón Fernández, Fiscal Auxiliar,* abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR TODD, JR., emitió la opinión del tribunal.

Nicolás del Valle fué acusado, convicto y sentenciado ante la Corte de Distrito de Mayagüez, de una violación a la sección 18 de la Ley 59 para reglamentar el servicio de muelles y puertos de Puerto Rico, aprobada el 30 de abril de 1928, porque:

". . . ilegal, voluntaria y maliciosamente y a sabiendas e intencionalmente, erigió una obra de madera consistente en una casa de consistencia permanente, en la zona marítima terrestre de Mayagüez,

P. R., barrio Marina Meridional, que son terrenos propiedad de 'El Pueblo de Puerto Rico', sin haber obtenido el consentimiento por escrito del Comisionado del Interior de Puerto Rico para tal fin."

La sentencia lo condenó a pagar una multa de veinte dólares, ordenándose además la remoción de la casa de acuerdo con la ley, y en este recurso alega el acusado que la corte inferior erró al no aplicar la doctrina del "ejusdem generis" y al resolver que la construcción de casas está incluída entre las prohibiciones del artículo 18 de dicha ley, al no resolver que sus disposiciones son nulas por referirse a materias no incluídas en el título de la ley, al no absolver al acusado ya que los hechos que se le imputan no constituyen delito público y al condenar al acusado sin prueba suficiente.

El título y la sección 18 de la ley número 59 de 1928 (pág. 425) dicen así:

"Ley para reglamentar el servicio de muelles y puertos en Puerto Rico."

"  *      *      *      *      *      *      *

"Sección 18.—No se permitirá tender redes en los canales, entradas de puertos o en los lugares donde a juicio del capitán de puerto puedan estorbar la navegación y deberán ser retiradas éstas, inmediatamente, por sus dueños o encargados, tan pronto como reciban orden de hacerlo dada por el capitán de puerto. Tampoco se permitirá cocer resina, brea, trementina, ni ninguna otra materia combustible sobre ningún muelle, malecón, terraplén o parte de playa dentro de un puerto, ni a bordo de ningún barco surto en él sin la previa autorización escrita del capitán de puerto; *ni se permitirá en las orillas de los puertos, bahías o radas la erección de palizadas u obra alguna de madera, mampostería, concreto u otro material que le dé consistencia de permanente, ni cercas de alambre o de otro material en los mismos sitios o en la zona marítima o terrenos públicos contiguos a esta zona, sin que antes de erigirse cualesquiera de dichas obras se haya obtenido el consentimiento del Comisionado del Interior.*"

"La persona que infrinja esta sección de ley será castigada con pena no menor de veinte ni mayor de doscientos dólares de multa o con prisión por no menos de quince ni mayor de ciento ochenta días o con ambas penas a discreción de la corte y además será responsable civilmente por los daños causados, y los materiales que constituyan la obra podrán ser confiscados y vendidos para cubrir los gastos de

remoción, procediéndose para ello en la forma que determina la sección 15 de esta Ley.'' (Bastardillas nuestras.)

Lo que aparece en bastardillas es la parte pertinente del estatuto que se alega infringió el acusado. Éste, ante la corte inferior, después de plantear varias cuestiones de derecho, que fueron declaradas sin lugar, y de haber desfilado la prueba de cargo, presentó una moción de *nonsuit* y al ser declarada también sin lugar, sometió el caso sin presentar prueba de defensa alguna.

Para sostener el primer señalamiento de error, el apelante alega que, aplicando la doctrina de ''ejusdem generis'' la construcción de casas no está prohibida por la sección 18 de la Ley 59, supra. Sostiene que la intención legislativa fué castigar dos hechos, a saber: la construcción de palizadas de madera, mampostería, concreto u otro material, o de cercas de alambre o de otro material; y que la frase ''u obra alguna'' no incluye ''casas'', por el hecho de que una casa no es una obra similar a una palizada o a una cerca de alambre.

Si bien por la doctrina de ''ejusdem generis'', cuando en un estatuto se usan palabras que tienen un significado determinado que están seguidas de otras de sentido general, las últimas deben ser interpretadas como que están limitadas o restringidas a cosas o personas de la misma clase o naturaleza que las primeras, esta doctrina no es otra que una regla de interpretación que puede aplicarse para una mejor determinación y comprensión de la intención legislativa. No es una doctrina rígida e inflexible que pueda y deba aplicarse como regla interpretativa cuando dicha interpretación tendría como consecuencia hacer ineficaz dicha intención o propósito legislativo. Véase Crawford *Statutory Construction* (1940) pág. 327, sec. 191, 59 C. J. 981. Como se dijo en el caso de *U. S.* v. *Mescall,* 215 U. S. 26: ''no es una regla rígida (castiron rule), no deroga las demás reglas de interpretación y nunca se aplica para derrotar el verdadero propósito del estatuto según pueda determinarse de toda la ley.''

En cuanto a la máxima "noscitur a sociis", que también cita el apelante como aplicable al caso de autos, bastaría con decir que se ha resuelto que la doctrina de ejusdem generis no es otra cosa que un ejemplo de la máxima, más amplia, de noscitur a sociis, siendo ésta la que sostiene que cuando hay duda en cuanto al significado de una palabra puede determinarse el mismo refiriéndose al significado de otras palabras con aquella asociadas. Al igual que ejusdem generis, es una regla de interpretación que no debe aplicarse si al hacerlo se desvirtúa la ·intención legislativa. El alcance de la doctrina de noscitur a sociis está claramente expuesto en Crawford, *Statutory Construction,* página 325, sección 190.

Entre los significados de la palabra "obra" está la de "edificio en construcción", y "edificio" significa: "obra o fábrica construída para habitación o para usos análogos; como casa, templo, techo, etc." Diccionario de la Lengua Española. Academia Española.

En cambio "palizada" significa "sitio cercado de estacas", y una "cerca" es "un vallado, tapia o muro que se pone alrededor de cualquier sitio, heredad o casa para su resguardo o división." (Id. Id.).

Resolver, en el caso de autos, que de acuerdo con las doctrinas de ejusdem generis y noscitur a sociis, las frases "u obra alguna" y "cualesquiera de dichas obras", están limitadas y restringidas por las palabras "palizadas" o "cercas de alambre" sería derrotar la verdadera intención del legislador, según se desprende, no sólo de la sección 18 supra, sino de la sección 47 que, en lo pertinente, dispone que:

"Sección 47.—

"Los capitanes de puertos y los prácticos que actúen como tales estarán bajo la dirección e inspección del Comisionado del Interior, teniendo las siguientes facultades:

"(a)

"(b) Vigilar por sí y con sus auxiliares, por la conservación de los muelles, malecones, terraplenes, *y porque tanto éstos como los terrenos públicos que forman la zona marítima y los terrenos agregados a ella o ganados al mar, sean conservados y no sean ocupados sin*

*el consentimiento del Comisionado del Interior, dado por escrito, . . .''*
(Bastardillas nuestras.)

La intención del legislador no fué otra, en nuestra opinión, que prohibir, a menos que se haya obtenido un permiso escrito del Comisionado del Interior, la construcción, en las orillas de los puertos, bahías o radas, y en los terrenos públicos que forman la zona marítima y en los terrenos agregados a ella o ganados al mar, no sólo de palizadas y cercas de alambre, sino de cualquier clase de obra, bien sea de madera, mampostería, concreto, u otro material que le dé consistencia permanente. Limitar el significado de la palabra ''obra'' a la de palizadas o cercas de alambre haría ineficaz el estatuto. ¿Qué finalidad podría obtenerse con prohibir que se fabricaran palizadas y cercas de alambre en las orillas de los puertos, bahías o radas y cercas de alambre en la zona marítima o terrenos públicos contiguos a esta zona y resolver, al mismo tiempo, por interpretación, que pueden construirse casas, edificios, malecones, muelles o cualquiera otra obra en dichos sitios? La intención de la Legislatura fué la de no permitir obras de clase alguna de carácter permanente, que pudieran interrumpir el libre tránsito en el servicio de muelles y puertos en Puerto Rico. No debemos, por interpretación, limitar el alcance de la frase ''u obra alguna'' a cosas de la misma naturaleza que las palizadas o cercas de alambre.

No cometió la corte inferior el primer error imputado.

■ Tampoco el segundo, pues las disposiciones del artículo 34 de nuestra Carta Orgánica al efecto de que si cualquier asunto que no esté expresado en el título fuere incluído en cualquier ley, ésta se considerará nula en aquella parte que no haya sido expresada en el título, no son aplicables a casos, como el de autos, en el que se trata de una ley general de reglamentación de los servicios de muelles y puertos. La imposición de penalidades contenida en la misma es incidental y para poder llevar a cabo la reglamentación que en ella se hace. El fin de la disposición contenida, tanto en nuestra Carta Orgánica como en otras constituciones, de que ninguna

190

ley debe abarcar más de un asunto, a menos que se haga constar en su título, no es otro que el de evitar que se incluyan en el texto de una ley materias incongruentes y sin relación entre sí. *Louisiana* v. *Pilsbury,* 105 U. S. 278, 288. Pero, la sanción penal incluída en una ley de reglamentación general, al proveer ciertas prohibiciones que requieren aquella sanción, no hace nula dicha ley por el hecho de que en su título no se haya hecho constar dicha penalidad. 59 C. J. 814, sec. 495. Como se dijo en el caso de *Italia America Shipping Corp.* v. *Nelson,* 154 N. E. 198: ''cuando el título de una ley es de carácter general y es de tal naturaleza que la inferencia es que la ley es regulatoria y que las penalidades son un incidente propio para su ejecución, no se viola la limitación constitucional.''

Por el tercer señalamiento el apelante sostiene que los hechos que se imputan al acusado no constituyen un delito público porque lo que prohibe el artículo 18, supra, es la erección de cercas de alambre o de otro material en los mismos sitios en que se prohibe la erección de palizadas, esto es, en las orillas de los puertos, bahías o radas, y además en la zona marítima o terrenos públicos contiguos a esta zona y que, por tanto, la construcción de una palizada o de una casa en esta última zona no está prohibida. Alega además el apelante que la denuncia imputa al acusado la comisión del delito dentro de terrenos propiedad de El Pueblo de Puerto Rico o sea dentro de la zona marítima terrestre y que ésta no es propiedad de El Pueblo de Puerto Rico.

En cuanto al primer fundamento somos de opinión que lo que hemos dicho al resolver el primer señalamiento basta para demostrar que una interpretación literal del estatuto como la que pretende el apelante haría ineficaz la intención legislativa y no debe prevalecer. Tampoco el segundo, por los motivos que pasamos a considerar.

El artículo primero de la Ley de Puertos de 7 de mayo de 1880 disponía que son del dominio nacional y uso público

sin perjuicio de los derechos que correspondan a los particulares:

"1º. La zona marítimo-terrestre, que es el espacio de las costas o fronteras marítimas del territorio español que baña el mar en su flujo y reflujo, en donde son sensibles las mareas, y las mayores olas en los temporales en donde no lo sean. Esta zona marítimo-terrestre se extiende también por las márgenes de los ríos hasta el sitio en que sean navegables o se hagan sensibles las mareas.

"2º El mar litoral, o bien la zona marítima que ciñe las costas o fronteras de los dominios de España, en toda la anchura determinada por el Derecho internacional, con sus ensenadas, radas, bahías, puertos y demás abrigos utilizables para la pesca y navegación."

En el caso de *El Pueblo* v. *Dimas et al.*, 18 D.P.R. 1061, tantas veces citado a través de nuestra jurisprudencia, esta Corte, por su entonces Juez Asociado Sr. Del Toro, hizo un estudio detallado en relación con los terrenos del dominio público durante la soberanía de España que, por virtud del Artículo VIII del Tratado de París, fueron cedidos a los Estados Unidos, y entre ellos se encontraban los de la zona marítima terrestre antes mencionados. Por la sección 13 de la Ley Foraker, se especificó las propiedades que fueron adquiridas por los Estados Unidos a virtud del Tratado de París que se entregaron al gobierno establecido por dicha ley y entre ellas figuran: "todas las orillas de los puertos, muelles, embarcaderos y terrenos saneados, pero sin incluir la superficie de los puertos y aguas navegables".

Posteriormente, al aprobarse el Acta Orgánica de 2 de marzo de 1917 (39 Stat. 951), el Congreso ratificó dicha cesión al disponer en su artículo 7, en parte, que:

"Artículo 7.—Toda propiedad que hubiere sido adquirida en Puerto Rico por los Estados Unidos, en virtud de la cesión hecha por España en el tratado de paz celebrado el día 10 de diciembre de 1898, en puentes públicos, casas camineras, fuerza motriz de agua, carreteras, corrientes no navegables y lechos de las mismas, aguas subterráneas, minas o minerales bajo la superficie de terrenos particulares; toda propiedad que al tiempo de la cesión pertenecía, en virtud de las leyes de España entonces en vigor, a las diferentes juntas de

obras de puertos de Puerto Rico; *todas las orillas de los puertos, muelles, embarcaderos, terrenos saneados,* y todos los terrenos y edificios públicos no reservados hasta ahora por los Estados Unidos para fines públicos, *quedan por la presente bajo el dominio del Gobierno de Puerto Rico, para ser administrados a beneficio del pueblo de Puerto Rico; y la Asamblea Legislativa de Puerto Rico tendrá autoridad, con sujeción a las limitaciones impuestas a todas sus leyes, para legislar respecto a todos esos asuntos según lo estimare conveniente;* . . .'' (Bastardillas nuestras.)

De manera que desde el año 1917 todas las orillas de los puertos, muelles, embarcaderos y terrenos saneados están bajo el dominio del Gobierno de Puerto Rico para ser administrados a beneficio del pueblo de Puerto Rico sin la limitación que tenía la Ley Foraker, y se autorizó a la Asamblea Legislativa para legislar con relación a los mismos. Estando incluídas en la zona marítima terrestre, que anteriormente pertenecían a España, las costas o fronteras marítimas que baña el mar en su flujo y reflujo, en donde son sensibles las mareas, y las mayores olas en los temporales, en donde no lo son, las mismas fueron adquiridas por los Estados Unidos a virtud del Tratado de París y más tarde puestas bajo el dominio del Pueblo de Puerto Rico a virtud de la Ley Foraker y de la Carta Orgánica vigente. Y, alegándose en la denuncia en este caso que el acusado construyó una casa en la zona marítima terrestre de Mayagüez en terrenos bajo el dominio de El Pueblo de Puerto Rico, la denuncia alega hechos suficientes.

■ Por el último señalamiento el apelante ataca la suficiencia de la prueba. El Capitán del Puerto de Mayagüez, Jesús Trujillo Lange, declaró, en síntesis, que el acusado estaba levantando una casa dentro de los terrenos ganados al mar, en la zona marítima terrestre, a la margen derecha del Río Yagüez, que es zona marítima también y que el acusado le manifestó que no tenía permiso del Comisionado del Interior para fabricarla. Esta declaración no fué contradicha en forma alguna, pues el acusado no presentó prueba. Habiendo dado crédito la corte inferior a la misma, y no habiéndose alegado que actuara con pasión, prejuicio o parcialidad ni que

incurriera en manifiesto error en su apreciación, ella es suficiente para sostener la sentencia condenatoria.

*Se desestima el recurso y confirma la sentencia.*