CARLOS M. LÓPEZ, peticionario y apelante, *v.* HON. REXFORD G. TUGWELL, GOBERNADOR DE PUERTO RICO y LA COMISIÓN DE LA POLICÍA INSULAR, ETC., demandados y apelados.

Núm. 8616.—*Sometido:* Junio 8, 1943. *Resuelto:* Septiembre 23, 1943.

*Angel M. Villamil y Pedro J. Alcalá,* abogados del apelante; *Hon. Procurador General Interino M. Rodríguez Ramos y G. Benítez Gautier, Procurador Auxiliar,* abogados de los apelados.

EL JUEZ ASOCIADO SEÑOR DE JESÚS emitió la opinión del tribunal.

Contra el peticionario se formuló ante la Comisión de la Policía Insular un cargo que en síntesis puede exponerse así: Allá para el 28 de febrero de 1939 el apelante prestaba servicios en Caguas como policía de segunda clase. En dicho día, en unión de su compañero Carmona, P. I. núm. 598, arrestó al individuo Martín Torres Rodríguez en aquella ciudad por infracción a la Ley de la Bolita. La denuncia fué jurada por Carmona y el peticionario figuró como testigo. El día 10 de julio de 1939 empezó el juicio contra el

acusado Torres Rodríguez en la Corte Municipal de Caguas, presidida por el Hon. Tulio Rodríguez. No estando presente el peticionario por hallarse aquella mañana en Arecibo en cumplimiento de los deberes de su cargo, la corte pospuso la celebración de la vista para dos días después a fin de oír su declaración. El policía Carmona, en su declaración al empezar el juicio dos días antes de aquél en que declaró el peticionario, había identificado al acusado como la persona a quien el policía López, es decir, el peticionario, y él habían arrestado cinco meses antes y ocupádole un implemento del juego denominado "boli-pool". Pero al ser llamado a declarar el peticionario y preguntársele si conocía al acusado, declaró que aquél no era el hombre que él había arrestado. Con tal motivo, según se alega en el cargo, surgió una duda sobre la culpabilidad del acusado y el juez municipal lo absolvió por esa razón.

Se celebró una vista ante la Comisión de la Policía Insular con la sola asistencia de dos de sus miembros, por existir una vacante que no había sido cubierta para aquella fecha, y el peticionario fué declarado culpable, ordenándose su separación del cuerpo de la Policía Insular. Acudió en alzada ante el Gobernador de conformidad con la sección 9 de la Ley disponiendo la Organización, Reglamentación y Gobierno de la Comisión Insular de la Policía, según fué enmendada, por la Ley núm. 150 de 9 de mayo de 1938 (Leyes de ese año, pág. 343), siendo confirmada la resolución de la Comisión de la Policía Insular. Instó el peticionario entonces en la corte inferior recurso de *certiorari* para revisar la decisión así confirmada por el Gobernador, todo de acuerdo con la sección 9, supra, dictándose la sentencia apelada que declaró sin lugar la petición de certiorari y anuló el auto expedido. Para revisar esa sentencia se interpuso esta apelación.

██ El primer error que señala el apelante es el haber resuelto la corte inferior que dentro del recurso de cer-

tiorari carecía de facultad para pasar sobre la suficiencia de la prueba que tuvo ante sí la Comisión de la Policía Insular.

Es regla bien establecida en derecho administrativo que los tribunales de justicia, al revisar decisiones de juntas o tribunales administrativos no alterarán las conclusiones a que hubieren llegado dichos tribunales administrativos en la apreciación de la prueba; pero esto no releva al tribunal de justicia del deber que tiene de examinar la evidencia a fin de determinar si ésta justifica o sostiene en alguna forma las conclusiones de hecho a que llegare el tribunal administrativo, aunque el tribunal de justicia, de haber oído originalmente la prueba, hubiera podido llegar a una conclusión distinta de aquella a que llegó el tribunal administrativo. La cita que del caso de *Jackson* v. *The People,* 9 Mich. 111, se hace con aprobación en *Mayagüez Sugar Co.* v. *Tribunal de Apelación de Contribuciones de P. R.,* 60 D.P.R. 753, 762, es de perfecta aplicación a la cuestión que nos ocupa:

"La función de un certiorari no es, sin embargo, revisar cuestiones de hechos, sino cuestiones de derecho. Y cuando la corte de apelación entra en el examen de la evidencia lo hace no para determinar si las probabilidades se inclinan hacia uno u otro lado, sino simplemente para determinar si la evidencia es tal que justifique la conclusión (*finding*) como una inferencia válida de los hechos probados, independientemente de que dicha inferencia hubiera o no sido hecha por la corte de apelación."

Debemos tener presente que la sección 9, supra, al conceder a la Comisión de la Policía Insular la facultad de imponer castigos, incluyendo el de separación del cuerpo mediante la investigación y resolución de los cargos que se formularen contra los empleados de la Policía Insular, no concedió una facultad que pudiera ser ejercitada arbitraria o caprichosamente, sino basada en evidencia competente que sostenga sus conclusiones. De no ser así, esa delegación de poder violaría la garantía constitucional del debido procedimiento de ley contenida en el artículo 2 de nuestra Ley Or-

gánica. Siendo ello así, para que la Comisión tenga jurisdicción para castigar a un miembro de la Policía Insular, precisa la celebración de una audiencia donde el querellado tenga la oportunidad de estar presente, de contradecir la prueba que contra él se presente, de presentar cualquiera prueba competente que sea pertinente a su defensa, y finalmente que exista evidencia que sostenga el fallo de la Comisión. Véanse a ese efecto los casos de *Smith* v. *Board of Police Commission,* 36 P. (2d) 670; *Garvin* v. *Chamber,* 232 Pac. 696, citados, entre otros, en el alegato del peticionario.

■ Veamos ahora si existe evidencia alguna que justifique la resolución de la Comisión.

La prueba de cargo puede sintetizarse así: El 28 de febrero de 1939 el peticionario y su compañero el policía Concepción Carmona arrestaron al individuo Martín Torres en la ciudad de Caguas por una infracción a la ley de la bolita, habiéndole ocupado el peticionario sobre su persona 17¢ y unos boletos de *boli-pool.* Condujeron a Torres al cuartel, donde se procedió a redactar la correspondiente denuncia, hecho lo cual el policía Carmona llevó al arrestado a la cárcel y el peticionario la denuncia a la Corte Municipal. Llamado el caso a juicio cinco meses más tarde, el peticionario se hallaba en Arecibo en cumplimiento de las obligaciones de su cargo, por lo que el Juez Municipal, después de oír la declaración del policía Carmona, dejó el caso abierto para ser continuado dos días después, a las dos de la tarde, fecha en que debería estar el peticionario de regreso en Caguas. Se procedió a la continuación del juicio y llamado el ahora apelante a declarar, se le interrogó si conocía al acusado, contestando aquél que no se le parecía a la persona que él había arrestado en relación con el caso que se ventilaba. El Juez Municipal absolvió al acusado y luego llamó al Jefe de Distrito de Caguas para indicarle la conveniencia de que se practicara una investigación en relación con la conducta del peticionario. La practicó el jefe, declarando el Juez Muni-

cipal y el peticionario. Como resultado de la investigación se formuló el cargo que ha dado motivo a este procedimiento.

En la audiencia celebrada ante la Comisión de la Policía Insular se probó más allá de duda razonable por las declaraciones del policía Carmona, del procesado Martín Torres, y del peticionario, que al ser arrestado Martín Torres el 28 de febrero de 1939 vestía un traje de trabajo, sucio y en malas condiciones, y llevaba unas gafas negras, y que el día del juicio en la Corte Municipal el mismo Torres se presentó bien vestido, y sin gafas, siendo corroborado esto último por el propio Juez Municipal, quien llamado a declarar por el peticionario manifestó que el acusado al comparecer en la Corte Municipal estaba vestido más o menos como en los momentos en que declaraba ante la Comisión y que no llevaba gafas. Manifestó también el Juez Municipal mientras declaraba como testigo de cargo ante la Comisión, que se había seguido un proceso contra un tal Mariano Sánchez por infracción de la ley de bolita; que el policía Carmona, denunciante en dicho caso, declaró haber ocupado cierto implemento del juego en la persona de Mariano Sánchez; que el peticionario, que era el otro testigo de cargo, declaró que el implemento había sido ocupado en el suelo, y que con tal motivo el Juez tuvo que absolver al acusado. Habiéndole preguntado la Comisión por qué no lo procesó por perjurio en aquella ocasión, dijo: "Porque eran entonces dos testigos y *de ellos uno decía una cosa y el otro decía otra; de manera que la corte no sabía cuál era el que estaba declarando la verdad."* Véase, sin embargo el artículo 18 de la Ley de Evidencia.

En su declaración el peticionario explicó satisfactoriamente, a nuestro juicio, lo que le había sucedido en la Corte Municipal. Describió las condiciones en que se hallaba Torres cuando fué por él arrestado, es decir, en traje de trabajo, sucio, y con unas gafas negras; que en esa oca-

sión sólo estuvo junto a él el tiempo que invirtió en llegar al cuartel y el que se necesitó para redactar la denuncia, y que antes de esa fecha no lo conocía ni volvió a verlo hasta cinco meses después en que compareció en la Corte Municipal bien vestido y sin gafas.

La prueba que tuvo ante sí la Comisión es perfectamente compatible con una conducta honrada y digna de un funcionario recto y cumplidor de su deber. Si algo hay que contribuya a disfrazar las facciones de una persona es el ocultar la vista tras unos cristales negros. Con frecuencia se valen de ese ardid los criminales para evitar su identificación. Lo natural, lo que a menudo sucede, es que una persona que ve a otra por primera vez, por breve tiempo, usando unas gafas negras, con ropa de trabajo, no puede identificarla más de cinco meses después al verla de nuevo bien vestida y sin las gafas.

No aparece del récord que el Juez Municipal hiciera durante el juicio criminal el más mínimo esfuerzo por refrescar la memoria del testigo y en circunstancias tales no es lógico ni justo interpretar la conducta del apelante en el sentido de que maliciosamente faltase a la verdad para favorecer a un acusado que él mismo había arrestado. Tampoco milita contra él lo sucedido en el caso seguido contra Mariano Sánchez, en el supuesto de que tal evidencia fuese admisible dentro del cargo que se ventilaba. El propio Juez Municipal, no obstante haber visto y oído declarar a los dos policías, admitió que no procesó al apelante porque no pudo determinar cuál de los dos decía la verdad. Y si eso opinó el Juez Municipal, ¿qué base podía tener la Comisión para determinar sin otra evidencia, que fué el apelante y no el policía Carmona quien en aquella ocasión faltó a la verdad?

No estando justificada por la prueba la decisión de la Comisión, abusó ésta de su discreción al dictarla en los términos en que lo hizo. Consecuentemente, *procede declarar con lugar este recurso, revocar la sentencia apelada y en su*

*lugar dictar la que debió haber dictado la corte inferior, es decir, revocar la decisión de la Comisión de la Policía Insular de Puerto Rico y ordenar la reposición del apelante en su puesto de policía insular, con devolución de los sueldos por él devengados y no recibidos desde la fecha en que fué separado hasta aquélla en que fuere repuesto; con costas a la parte apelada.*

El Juez Asociado Sr. Snyder no intervino.