Sofía Pérez Segovia, peticionaria y apelada, *v.* Tribunal de Distrito de San Juan, Hon. Jesús A. González, Juez, demandado; Cristóbal Puig Albons y María Luisa Puig Pérez, interventores y apelantes.

Núm. 9628.—*Sometido:* Febrero 10, 1948. *Resuelto:* Junio 23, 1948.

*Damián Monserrat, Jr., Gabriel de la Haba y Rafael Baragaño, Jr.,*
abogados de los apelantes; *E. Martínez Rivera y L. Blanco Lugo,*
abogados de la apelada.

EL JUEZ ASOCIADO SEÑOR SNYDER emitió la opinión del tribunal.

Sofía Pérez Segovia radicó un pleito sobre liquidación
de la sociedad de gananciales que existió entre ella y su ex
esposo. Alegó la demandante que Cristóbal Puig Albons y
ella se divorciaron en 1947 después de estar casados durante
25 años; que en el procedimiento de divorcio la corte la
declaró cónyuge inocente; y que los bienes pertenecientes a
la sociedad de gananciales tenían un valor en exceso de
$250,000. Poco después de radicar su demanda de liquidación, la demandante presentó una moción en la que pedía
que, mientras se sustanciaba el pleito, la corte ordenase al
demandado Puig a pasarle $500 mensuales para alimentos,
$5,000 para cubrir los gastos de un viaje de España a Puerto
Rico y $5,000 para los gastos del litigio.

El Juez Asociado Sr. Marrero, actuando como juez de
turno de este Tribunal, expidió un auto de *certiorari* a solicitud de la esposa para revisar la resolución de la corte
de distrito declarando sin lugar esa moción. El juez de
turno anuló la resolución de la corte de distrito. Resolvió
que (1) procedía el certiorari en este caso, citando a *Mercado Riera* v. *Mercado Riera,* 152 F.2d 86 (C.C.A. 1, 1945);
y que (2) la peticionaria tenía derecho a recibir de su ex
esposo un anticipo para alimentos y gastos judiciales, con
cargo a su participación en los bienes gananciales, cuando
ésta se determinase por sentencia firme en el pleito sobre
liquidación. El caso se encuentra ahora ante nos en apelación contra la sentencia dictada por él.

## I

La primera cuestión suscitada es si el juez de
turno cometió error al expedir el auto de certiorari. Este

problema envuelve la interpretación de la Ley de 10 de marzo, 1904 (pág. 123), que constituye ahora los artículos 670–4 del Código de Enjuiciamiento Civil. El artículo 670 define el certiorari así:

"El auto de *certiorari* es un auto expedido por un tribunal superior a otro inferior, por el cual se exige del último la remisión al primero, de una copia certificada de las diligencias pendientes en el tribunal inferior o los autos de alguna causa ya terminada, en aquellos casos en que el procedimiento adoptado no esté de acuerdo con las prescripciones de la ley, y con objeto de terminar los procedimientos cuando el tribunal inferior rehusare hacerlo fundado en bases erróneas."

Presumimos que este caso envuelve una cuestión de derecho sustantivo.[1]  Parece que el juez de turno supuso lo mismo. Apoyándose en el caso de *Mercado,* expidió el auto en la teoría de que procede el certiorari a tenor con el artículo 670 para revisar errores de derecho sustantivo.

La posición asumida por el juez de turno está apoyada por el caso de *Mercado.* En ese caso la Corte de Circuito resolvió que de acuerdo con el artículo 670 este Tribunal (pág. 94) "tiene jurisdicción bajo el estatuto insular [art. 670]

---

[a] Durante generaciones las cortes se han confrontado con el enojoso problema de clasificar los casos en las dos diferentes categorías de derecho sustantivo y procesal. El Juez Magruder, en *Sampson* v. *Channell,* 110 F.2d. 754 (C.C.A. 1, 1940), denegado el certiorari en 310 U.S. 650, dice a la pág. 755, escolio 2, que "las reglas de procedimiento son aquéllas que tratan de los métodos de presentarle a una corte los hechos decisivos sobre los cuales dependen las relaciones legales; las reglas sustantivas, aquéllas que tratan del efecto legal de los hechos una vez establecidos éstos." Pero el derecho sustantivo y el procesal no son "categorías mutuamente exclusivas con alcances fácilmente determinables." *Sibbach* v. *Wilson & Co.,* 312 U.S. 1, 17, opinión disidente. Existen muchos casos que caen en la línea fronteriza entre lo sustantivo y lo procesal, y son racionalmente clasificables en una u otra categoría, *Sampson* v. *Channell,* supra, pág. 757, escolio 4. Además, por diversos motivos, ocasionalmente el mismo asunto es considerado en un campo del derecho como procesal, y en otro como sustantivo. Véanse, Cook, *"Substance"* and *"Procedure" in the Conflict of Laws,* 42 Yale L. J. 333; *Restatement, Conflict of Laws,* secciones 584, *et seq.; Sibbach* v. *Wilson & Co.,* supra; 2 Moore's *Federal Practice,* 2da. ed., párrafo 1.04, págs. 22–32, párrafo 2.09, págs. 432–56; *Sampson* v. *Channell,* supra; *Cities Service Co.* v. *Dunlap,* 308 U.S. 208; 1942 *Annual Survey of American Law,* págs. 819–829.

para expedir autos de certiorari con el fin de revisar los erores cometidos por las cortes inferiores no importa la naturaleza del error imputado.'' Afirma la Corte de Circuito a la pág. 93 que el artículo 670 no distingue entre cuestiones de derecho procesal y derecho sustantivo. Concluye diciendo que la disposición del estatuto al efecto de que procede el certiorari en aquellos casos ''en que el procedimiento adoptado no esté de acuerdo con las prescripciones de la ley'' significa que procede el certiorari (pág. 94) ''cuando la corte inferior no ha pocedido de acuerdo con, en otras palabras, no ha seguido, las prescripciones de la ley.''

Es una cuestión de ley local si procede el certiorari bajo el artículo 670 para revisar errores de derecho sustantivo, o si bajo dicho artículo el certiorari está limitado a revisar errores de procedimiento o de jurisdicción. Por tanto, examinamos este problema teniendo en cuenta que estamos en libertad de opinar de modo distinto a la Corte de Circuito sobre esta cuestión. *De Castro* v. *Board of Comm'rs.*, 322

El presente caso quizá podría clasificarse como que cae en la zona crepuscular existente entre lo sustantivo y lo procesal. El argumento para llamar procesal a esta cuestión, sería algo así: La moción de la esposa no levanta cuestión alguna de derecho sustantivo. No alega que ella tiene derecho a alimentos mientras se resuelve el pleito de liquidación. Más bien sostiene que en esta etapa de los procedimientos, ella tiene derecho a solicitar un anticipo para alimentos y gastos del pleito, a cargarse a su participación definitiva en los bienes gananciales. Es decir, el problema es si ella tiene derecho a un remedio intermedio o debe esperar la sentencia firme. Así expuesta, la cuestión, si bien quizá no sea de naturaleza puramente procesal, podría tener suficientes aspectos procesales para justificar la expedición del auto, aun cuando el certiorar procediera bajo el artículo 670 solamente para revisar errores de procedimiento o de jurisdicción.

Sin embargo, este argumento no es particularmente persuasivo. La peticionaria no lo levanta. Por el contrario, ella y el juez de turno aparentemente admiten que la cuestión aquí envuelta es sustantiva, no procesal. Y descansan en el caso de *Mercado* en el que la Corte de Circuito resolvió que bajo el artículo 670 procede el certiorari para revisar errores de las cortes inferiores no importa si son sobre cuestiones de derecho procesal o sustantivo. Por consiguiente, creemos que el presente es el caso apropiado para dejar resuelta esta importante cuestión de ley local.

U.S. 451; *Díaz v. P. R. Ry., Light & Power Co.*, 63 D.P.R. 808, 816–18; *Torres v. Roldán*, 67 D.P.R. 367, 370–1.

No podemos convenir con algunas de las manifestaciones expuestas por la Corte de Circuito en el caso de *Mercado*. Dicha Corte dice (pág. 93) ''no encontramos caso alguno en que el Tribunal Supremo de Puerto Rico haya interpretado la ley de certiorari teniendo en mente la distinción del derecho común entre el derecho adjetivo y el sustantivo . . .''. Sin embargo, hay docenas de casos en los cuales este Tribunal ha resuelto que bajo el artículo 670 procede el certiorari solamente para revisar errores de procedimiento o de jurisdicción y no para corregir errores de derecho sustantivo.([2])

La Corte de Circuito también descansa en el uso de la palabra ''procedimiento'' en el texto español del artículo 670 al llegar a su conclusión de que el artículo comprende cuestiones de derecho sustantivo. Pero los archivos de la Legislatura demuestran que la Ley de 1904 se aprobó originalmente en inglés. De conformidad con el artículo 13 del Código Civil, si existiera algún conflicto entre los dos textos, tendría que ser resuelto a favor de la versión original inglesa. Sin embargo, somos de opinión que (1) la traducción al español del artículo 670 es sustancialmente satisfactoria y (2) de todos modos, como más adelante se indi-

---

([2])*Fernández v. La Corte de Distrito*, 6 D.P.R. 202 (2d. ed.); *Díaz v. Corte de Distrito*, 9 D.P.R. 586; *Sucesión Núñez v. La Corte de Distrito*, 14 D.P.R. 21; *Mora v. Foote, Juez de Distrito*, 16 D.P.R. 19; *Alvarez v. López, Juez de Distrito*, 17 D.P.R. 947; *López v. Córdova Dávila, Juez de Distrito*, 18 D.P.R. 1; *National Surety Company v. Rossy, Juez de Distrito*, 19 D.P.R. 946; *Manrique v. Diez, Juez Municipal*, 22 D.P.R. 180; *Porto Rican-American Tobacco Co. v. Juez Municipal de Río Piedras*, 32 D.P.R. 373; *Agostini v. Corte Municipal de San Juan y Real*, 33 D.P.R. 816; *De Castro v. Corte*, 40 D.P.R. 771; *Robles v. Corte*, 43 D.P.R. 280, 44 D.P.R. 967; *National City Bank of N. Y. v. Corte*, 45 D.P.R. 874; *Cafeteros de Yauco, Inc. v. Corte*, 46 D.P.R. 573; *Cabassa Vda. de Fajardo v. Corte*, 47 D.P.R. 372; *Great American Indemnity Co. v. Corte*, 47 D.P.R. 927; *Smallwood v. Corte*, 53 D.P.R. 742; *Pedroza v. Corte*, 58 D.P.R. 768; *Mangual, Alcalde v. Corte*, 61 D.P.R. 417. En estos casos hay innumerables manifestaciones similares a nuestro lenguaje en *Pueblo v. Corte*, 44 D.P.R. 703, 711: ''Procede el auto extraordinario

cará, la frase clave en el artículo 670 es "the course of the law"—traducida en la ley como "las prescripciones de la ley"—más bien que la palabra "procedimiento".

De igual modo la Corte de Circuito encontró apoyo en qué basar su conclusión de que bajo el artículo 670 podía utilizarse el certiorari para revisar errores de derecho sustantivo, en tres de nuestros casos; v.g., *Méndez* v. *Soto Nussa, Juez de Distrito*, 13 D.P.R. 379; *Núñez* v. *Soto Nussa, Juez de Distrito*, 14 D.P.R. 199; *Sánchez et al.* v. *Cuevas Zequeira*, 23 D.P.R. 50. Pero ninguno de estos casos resuelve eso.

En *Méndez* v. *Soto Nussa*, supra, estaba envuelta una sentencia de la corte de distrito en apelación de la corte municipal. Toda vez que la suma reclamada era menor de $300, no podía apelarse para ante este Tribunal. El demandado nos solicitó un certiorari para revisar la resolución de la corte de distrito admitiendo en evidencia dos pagarés. Anulamos el auto de certiorari preliminar. Resolvimos que (pág. 384) "el recurso de *certiorari* no procede en casos como el presente. Jamás se pretendió que sus efectos alcanzaran la admisión o exclusión de pruebas."

El *dictum* a las págs. 383-4 del caso de *Méndez*, según lo cita la Corte de Circuito en el caso de *Mercado* a la pág. 94, no tuvo la intención de abrir las puertas al recurso de certiorari "no importa la naturaleza del error imputado".

de *certiorari* cuando no existe en el curso ordinario de la ley otro remedio eficaz y está envuelta alguna cuestión de jurisdicción o de procedimiento, descansando su expedición en la discreción de la corte. La regla es fácil de exponer. La dificultad está en aplicarla. Hay casos tan claros, tan típicos de jurisdicción o de procedimiento, que el así determinarlo no suscita dudas de ningún género. Pero hay otros que requieren un detenido estudio para fijar su naturaleza."

Al mismo efecto, Toledo Alamo, El Certiorari Clásico en Puerto Rico, XVI Rev.Jur. U.P.R. 315, 330-32, y los casos citados en los escolios 52-59. En este artículo el Profesor Toledo hace un hábil y minucioso estudio de todos nuestros casos de certiorari desde 1904 al 1947; pero, y no es su culpa, aquella parte de su acabado estudio que trata del alcance del auto pasa a ser obsoleta en virtud de esta opinión.

Dicha discusión se hizo principalmente con el fin de demostrar, como frecuentemente hemos resuelto, que aun donde existe la apelación, se expedirá el certiorari si la apelación resultare inadecuada, inefectiva o tardía. Es decir, el que una sentencia o resolución sea apelable no impide necesariamente la expedición de un auto de certiorari. Pero en el caso de *Méndez* concluímos finalmente que procederá el certiorari únicamente para revisar errores de procedimiento o de jurisdición.

El caso de *Núñez* v. *Soto Nussa,* supra, trataba de un pleito de injunction radicado por el administrador de una empresa de teatro con el fin de prohibirle a la cantante demandada que violara su contrato para cantar en ciertos espectáculos públicos. Este Tribunal concedió el certiorari para revisar las resoluciones concediendo un injunction preliminar y multando a la demandada por desacato.

Resolvimos que las resoluciones concediéndole al demandante un injunction preliminar y castigando a la demandada por desacato eran nulas. En consecuencia las dejamos sin efecto en el recurso de certiorari debido a que (págs. 203-4) "la extralimitación en su jurisdicción por parte de una corte, es uno de los motivos más comunes para pedir auxilio mediante el auto de *certiorari".*

El lenguaje citado por la Corte de Circuito a la pág. 94 del caso de *Mercado* del caso de *Núñez* a la pág. 201, nuevamente se refiere al uso del certiorari aun donde procede la apelación, y nada tiene que ver con la procedencia del certiorari para revisar errores que no caen en las categorías del procedimiento o de la jurisdicción. Es más, indicamos en *López* v. *Córdova Dávila,* 18 D.P.R. 1, que el caso de *Núñez* reiteraba la regla al efecto de que solamente son revisables por certiorari errores de procedimiento o de jurisdicción.

La Corte de Circuito a las págs. 94-5 del caso de *Mercado* cita nuestro lenguaje en el caso de *Sánchez et al.* v.

*Cuevas Zequeira,* supra, págs. 54-55. Pero también en dicho caso reiterábamos la regla de que se expedirá el certiorari aun cuando la sentencia o resolución recurridas sean apelables. Ni la decisión de dicho caso, en el que estaban envueltas cuestiones de procedimiento, ni su lenguaje, indicaban que procede el certiorari en virtud del artículo 670 para revisar cuestiones de derecho sustantivo.

Finalmente, la Corte de Circuito encontró algo significativo el hecho de que en muchos casos este Tribunal (pág. 94) "ha expedido el certiorari para revisar supuestos errores sin que se haya discutido la naturaleza adjetiva o sustantiva del referido error." No cabe dudar que en muchos casos hemos expedido el certiorari bajo el artículo 670 sin discutir la naturaleza de los errores. Y alguna que otra vez hemos revisado errores que son difíciles, si no imposibles, de clasificar como procesales. Véanse, por ejemplo, *Battistini* v. *La Corte de Distrito de Ponce,* 8 D.P.R. 592; *Comas* v. *Corte de Distrito,* 39 D.P.R. 7.63; *Porrata* v. *Corte,* 53 D.P.R. 148; *Palermo* v. *Corte,* 58 D.P.R. 189; *Riviere, Síndico* v. *Corte,* 60 D.P.R. 732; *Ramírez* v. *Corte,* 64 D.P.R. 530; *Valdés* v. *Tribunal de Distrito,* 67 D.P.R. 310; *Latoni* v. *Corte Municipal,* 67 D.P.R. 140. En verdad, en el propio caso de *Mercado,* 62 D.P.R. 368, 390, y en el de *Núñez* v. *Soto Nussa,* supra, los errores, si bien caracterizados por nosotros como "extralimitación" o "exceso" de jurisdicción, en último análisis parecen ser de naturaleza sustantiva. Sin embargo, dondequiera que hemos discutido la cuestión expresamente, por lo menos hemos dado a entender de la manera más inequívoca posible que la regla es que procede el certiorari bajo el artículo 670 solamente para revisar errores de procedimiento o de jurisdicción.

En síntesis en el caso de *Mercado* la Corte de Circuito hace las siguientes proposiciones: (1) La interpretación del artículo 670 por este Tribunal no distingue entre errores procesales y sustantivos; (2) la palabra "procedimiento"

en la versión española del artículo 670 arroja alguna luz especial sobre el alcance de dicho artículo; (3) tres de nuestros casos sostienen la regla de que procede el certiorari para revisar errores de derecho sustantivo; (4) es algo significativo el hecho de que en ciertos casos hemos expedido el certiorari sin discutir la naturaleza del error alegado. Pero no nos encontramos en condiciones de convenir con lo arriba expuesto.

Sin embargo, el que no estemos de acuerdo con estos aspectos de la opinión de la Corte de Circuito no resuelve el problema. Aún nos confrontamos con la proposición fundamental de que la Corte de Circuito, después de cuidadosa consideración, inequívocamente resolvió que de su faz el artículo 670 autoriza el certiorari para revisar errores, no importa su naturaleza sustantiva o procesal. Por tanto, es nuestro deber reexaminar nuestros casos que resuelven lo contrario.

Después de haber estado en vigor durante muchos años las constituciones y los estatutos y de haber sido interpretados por las cortes en varios casos, inevitablemente la tendencia es a leer los casos y no la constitución o el estatuto en sí cuando surge una cuestión sobre su alcance. Pero si vamos a desempeñar adecuadamente la tarea que hemos emprendido de reexaminar la doctrina establecida en nuestros casos anteriores, debemos regresar a la Ley de 1904 y leerla sin la pátina que nuestros casos le han dado.

Al leer la Ley por sí sola, nos impresiona, lo mismo que a la Corte de Circuito, el hecho de que nada hay en ella que se refiera a cuestiones de procedimiento propiamente dichas. Tampoco hay en el artículo 670 la más remota referencia a jurisdicción. En nuestros casos, con el fin de justificar la expedición de certiorari donde técnicamente la corte tiene jurisdicción pero la ejercita erróneamente, ocasionalmente hemos empleado, lo mismo que otras cortes, el vago e indefinido concepto de que la corte inferior actuó en

"exceso" de su jurisdicción. Esta frase no tiene ningún significado legal preciso. La única manifestación satisfactoria que puede hacerse de ella es que es mucho más amplia que la de error de jurisdicción o falta de jurisdicción. *Abelleira* v. *District Court of Appeal, Third District,* 109 P.2d 942 (Calif., 1941); *Olson* v. *District Court of Salt Lake County,* 71 P.2d 529, 534 (Utah, 1937). En un número de los estados procede el auto para revisar errores en exceso de jurisdicción, porque el estatuto expresamente usa esta frase al definir el certiorari. Pero nuestro estatuto no contiene referencia alguna a cuestiones de procedimiento, de jurisdicción o de exceso de jurisdicción. Forzoso es concluir que los conceptos de procedimiento y de jurisdicción, así como la restricción de la ley a aquellas dos clases de casos, fueron inyectados en el artículo 670 por nuestras opiniones anteriores sin que su lenguaje tuviera justificación alguna para ello.

El estudio de nuestros casos antiguos en que se desarrolló esta regla restrictiva demuestra cómo caímos en este error. No discutimos el alcance del artículo 670, palabra por palabra. Tampoco investigamos su historia hasta su origen legislativo. Por el contrario, citamos casos de otras jurisdicciones que resolvían que el certiorari sólo procede para revisar errores de procedimiento o de jurisdicción. Pero dichos casos nunca debieron aceptarse sin examinarlos cuidadosamente. Existen muchos casos estatales que resuelven que el certiorari procede para revisar cuestiones de derecho sustantivo. Como cuestión de hecho en los Estados Unidos no existe regla general alguna en cuanto a la naturaleza de los errores revisables por certiorari. "Diversas constituciones, estatutos y decisiones judiciales brindan innovaciones, ampliaciones y restricciones del derecho común en cuanto al remedio [de certiorari] que al considerarse en conjunto asumen un cariz múltiple." 1943 *Annual Survey of American Law,* pág. 815.

Los archivos de la Legislatura no contienen una historia legislativa que pueda arrojar alguna luz sobre el alcance de la Ley de 1904. Sólo sabemos que el proyecto se originó en la Cámara de Delegados, y que fué aprobado sustancialmente en la forma en que se introdujo el mismo día en que la Legislatura aprobó el Código de Enjuiciamiento Civil, que estableció nuevas normas de procedimiento ante nuestras cortes.

No obstante la ausencia de historia legislativa, el propio texto de la Ley demuestra que fué redactada para que se ajustara lo más posible al antiguo auto de certiorari del derecho común. Pound, *Appellate Procedure in Civil Cases*, dice que (págs. 60-1) "Toda vez que el King's Bench y el Common Pleas efectuaban la revisión general de todos los tribunales de jurisdicción inferior, podían traer ante sí los procedimientos en dichos tribunales mediante el *certiorari*, con el fin de que los jueces pudiesen revisar el récord y ver que los tribunales se ajustasen a los linderos de sus jurisdicciones y procediesen *de acuerdo con las prescripciones de la ley común.*" (Segundas bastardillas nuestras.) Y a la pág. 288 "El certiorari era en el derecho común el modo de revisar los procedimientos cuando éstos no estuviesen *de acuerdo con las prescripciones de la ley común.*" (Bastardillas nuestras.) Nuestro estatuto está redactado en los mismos términos. Dispone la revisión cuando la actuación de la corte inferior "no esté de acuerdo con las prescripciones de la ley." Al traer el certiorari a esta jurisdicción de derecho civil, desde luego era imperativo eliminar el adjetivo "común". Con esta alteración, nuestra Ley es casi una versión *verbatim* del antiguo auto de certiorari del derecho común.

El caso que más nos ha ayudado de los que hemos encontrado con referencia a la naturaleza de los errores revisables por certiorari en el derecho común es el de *Jackson* v.

*The People,* 9 Mich. 111 (1860).(³)   En dicho caso la corte concluye que en el derecho común (pág. 118) "el alcance del auto está considerado como que comprende todos los errores de derecho."

La corte de Michigan admite que existe una serie de decisiones de Nueva York al efecto de que procede el certiorari en el derecho común solamente para revisar la jurisdicción de una corte inferior.   Pero hace un historial de los casos y leyes ingleses que demuestra cómo fué que las cortes de Nueva York obtuvieron este erróneo concepto del certiorari del derecho común.   En Inglaterra, después que las cortes del derecho común desarrollaron el auto de certiorari, se aprobaron leyes que privaban a los litigantes del derecho al certiorari bajo el derecho común en ciertos tipos de casos.   Sin embargo, las cortes inglesas resolvieron que aun en dichos casos procedía el certiorari por falta de jurisdicción.   Estos últimos casos fueron interpretados erróneamente por algunos jueces estatales como que restringían el alcance del certiorari en el derecho común, como proposición general.   Pero según demuestra el caso de *Jackson,* el concepto original del certiorari en el derecho común era corregir errores donde la corte inferior no actuó "de acuerdo con las prescripciones de la ley [común]"; v.g., dejó de aplicar correctamente la ley, sustantiva o adjetiva, a los hechos del caso.

Otras cortes han adoptado sustancialmente el mismo criterio, si bien algunas veces no en términos tan explícitos como el caso de *Jackson.* *Farmington River Water Power Company* v. *County Commissioners,* 112 Mass. 206 (1873); *Board of Supervisors* v. *Magoon,* 109 Ill. 142 (1884); *Harris* v. *Barber,* 129 U.S. 366 (1888); *Jacksonville, T. & K. W. Ry. Co.* v. *Boy,* 16 So. 290 (Fla., 1894); *State* v. *Guinotte,* 57 S.W. 281 (Mo., 1900); *State* v. *Reynolds,* 89 S.W. 877

---

(³)Este caso ha sido citado con aprobación por nosotros en *Mayagüez Sugar Co.* v. *Tribunal de Apelación de Contribuciones,* 60 D.P.R. 753, 762, y *López* v. *Tugwell, Gobernador,* 62 D.P.R. 493, 495.

(Mo., 1905); *Ex parte Dickens*, 50 So. 218 (Ala., 1909); *Hartz* v. *Murfin*, 129 N.W. 25 (Mich., 1910); *Conners* v. *City of Knoxville*, 189 S.W. 870 (Tenn., 1916); *In re Morgan*, 176 N.W. 606 (Mich., 1920); *Appeal of Fredericks*, 280 N.W. 464 (Mich., 1938); *Young* v. *Stoutamire*, 179 So. 797 (Fla., 1938); *Belk's Dept. Store, Inc.* v. *Guilford County*, 23 S.E.2d 897 (N.C., 1943); *White* v. *White*, 36 A.2d 661 (R.I., 1944); *Gatlinburg Beer Regulation Committee* v. *Ogle*, 206 S.W.2d 891 (Tenn., 1947); *Frink* v. *Orleans Corporation*, 32 So.2d 425 (Fla., 1947). Y *cf.* Regla 38, párrafo 5(*b*), última cláusula, *Revised Rules of the Supreme Court of the United States*, 1939, 306 U.S. 685, 719; *Mayagüez Sugar Co.* v. *Tribunal de Apelación de Contribuciones*, supra, págs. 762–63, citando con aprobación *Wilmington Trust Co.* v. *Helvering*, 316 U.S. 164.

A la luz de los casos antes citados y del lenguaje de nuestro estatuto, la Corte de Circuito tuvo base sólida para resolver en el caso de *Mercado* que la disposición del artículo 670 al efecto de que procede el certiorari en aquellos casos "en que el procedimiento adoptado no esté de acuerdo con las prescripciones de la ley" significa que puede expedirse el certiorari (pág. 94) en aquellos casos en que "la corte inferior no ha procedido de acuerdo con, en otras palabras, no ha seguido las prescripciones de la ley." En resumen, el determinar si una corte ha actuado "de acuerdo con las prescripciones de la ley" no es una cuestión de procedimiento. La frase "las prescripciones de la ley" es la clave para nuestros fines. Y de su faz dicha frase quiere decir el aspecto sustantivo de la ley. En la versión española del artículo 670 la cláusula en inglés "where procedure is not according to the course of the law" aparece traducida como "en que el procedimiento adoptado no esté de acuerdo con las prescripciones de la ley." Si bien esta traducción es razonablemente adecuada, el significado de la

versión inglesa se hace aún más claro si se traduce como "en que no se ha procedido de acuerdo con las disposiciones de ley."

Reconocemos que esta cuestión no está libre de dificultades. Los casos no son todos iguales. Aun dentro de una sola jurisdicción las cortes han vacilado sobre este punto. Y las leyes han restringido o limitado el concepto de certiorari del derecho común. Pero nuestra Legislatura, al proveer la revisión cuando la corte inferior no actúa "de acuerdo con las prescripciones de la ley", hizo lo mejor que pudo para calcar el auto de certiorari del derecho común en su versión original para ser usado en esta jurisdicción. Sobre este punto no podría haber duda alguna a no ser por nuestros casos. Pero éstos no encuentran justificación alguna en la ley. No puede permitirse que los mismos se interpongan en el camino de una política legislativa claramente expresada.

Según indica la Corte de Circuito en el caso de *Mercado* a la pág. 93, escolio 8, la última cláusula del artículo 670 nos permite ordenarle a la corte inferior "terminar los procedimientos cuando el tribunal inferior rehusare hacerlo fundado en bases erróneas." Dicha cláusula ha sido interpretada en el sentido de concedernos la opción de ordenarle a la corte inferior que termine los procedimientos o terminarlos nosotros mismos mediante una resolución o sentencia que dictemos en un caso adecuado. *Subirana et al.* v. *Padilla, Juez de Distrito,* 12 D.P.R. 73, 77; *Agostini* v. *Corte Municipal,* 33 D.P.R. 816; *Mercado* v. *Corte,* 62 D.P.R. 368, 391. Véase Toledo, supra, págs. 345–6. La autoridad expresamente conferida a este Tribunal por la última cláusula del artículo 670 para dictar una resolución firme resolviendo el caso, refuerza nuestra conclusión de que el auto rebasa los límites de errores de procedimiento y de jurisdicción: la terminación de los procedimientos de ordinario envuelve la resolución del caso en los méritos.

18

La Legislatura ha provisto la revisión por este Tribunal de cuestiones de derecho sustantivo en ciertas clases de casos mediante el certiorari especial. Ley núm. 32, Leyes de Puerto Rico, 1943 (pág. 85);(⁴) Sección 12, Ley núm. 17, Leyes de Puerto Rico, 1945 (pág. 45). Y véanse *Mayagüez Sugar Co.* v. *Tribunal de Contribuciones,* supra, y la sección 5 de la Ley núm. 169, Leyes de Puerto Rico, 1943 (pág. 601). En consecuencia, podría argüirse que al disponer la revisión de cuestiones sustantivas en estos casos específicos mediante el certiorari especial, la Legislatura demostró su intención de limitar el certiorari clásico a errores de procedimiento o de jurisdicción. La contestación es obvia. Estas leyes fueron aprobadas a la luz de nuestros casos limitando el alcance del artículo 670. Fueron aprobadas para evitar el efecto de estos casos en pleitos especiales. Estas leyes no enmendaron el artículo 670 y no impiden la revocación de nuestros casos que impusieron a dicho artículo restricciones que no tiene la ley.

En el caso de *Mercado* la Corte de Circuito insinúa a la pág. 95 que nosotros indicamos en el de *Méndez* que si se trata de una cuestión de jurisdicción, no podemos dejar de revisar el caso por certiorari. El caso de *Méndez* no resuelve eso, y el artículo 670 no hace tal distinción. Por el contrario, independientemente de la naturaleza del error, el auto es discrecional. Y huelga añadir que nos proponemos utilizarlo con cautela y solamente por razones de peso. El hecho de que ahora resolvamos que procede el certiorari para revisar toda clase de errores de derecho, adjetivos o sustantivos, no altera las reglas existentes con referencia a las circunstancias bajo las cuales ejerceremos nuestra discreción para expedir el auto.

(⁴)Para los casos bajo la Ley núm. 32, véase a Toledo, supra, pág. 348, escolio 129. La Ley núm. 32 fué derogada por la núm. 380. Leyes de Puerto Rico, 1946((1) pág. 1031).

Si algún lucero ha existido en nuestra constelación judicial, éste ha sido que el certiorari procede bajo el artículo 670 solamente para revisar los errores de procedimiento o de jurisdicción. Esta doctrina se ha adentrado tan firmemente en nuestra jurisprudencia que nuestra primera impresión fué que sería difícil, si no imposible, arrancarla bajo la regla de *stare decisis*. Pero bajo nuestra antigua interpretación del artículo 670 no existen derechos de propiedad u otros derechos adquiridos. *Cf. Mayagüez Lt., P. & I. Co.* v. *Tribunal de Contribuciones*, 65 D.P.R. 30, 35–37. Y una decisión de la corte que revisa nuestras decisiones precipitó la cuestión. Luego de hondo meditar y cuidadosa consideración, concluimos que era ineludible reexaminar la cuestión. Además, al resolver que tenemos que echar a un lado los casos que han inyectado en la ley restricciones que no aparecen de su texto, no estamos "legislando judicialmente". Por el contrario, quitar los grilletes que encadenaban el estatuto y con ello restituirle su forma prístina, si algo hace es dejar sin efecto anterior "legislación judicial" de este Tribunal.(⁵)

Nuestros casos que resuelven que bajo el artículo 670 el certiorari procede solamente para revisar errores de procedimiento y de jurisdicción quedan expresamente revocados. Resolvemos, igual que la Corte de Circuito en el caso de *Mercado,* que el artículo 670 no distingue entre cuestiones de derecho procesal y sustantivo, y que este Tribunal tiene el poder discrecional de expedir autos de certiorari para revisar errores cometidos por las cortes inferiores no importa la naturaleza del error imputado.

---

(⁵)"Legislación judicial" es una frase de variado alcance. Frecuentemente es un instrumento semántico empleado por aquéllos a quienes no les gusta el resultado obtenido por una corte enfrascada en la tarea de determinar el significado de una ley. Aquéllos que están conformes con el resultado la llaman "interpretación judicial".

## II

En cuanto a los méritos, la sentencia del juez de turno dice en parte como sigue:

"Por cuanto dadas las alegaciones de la 'Moción solicitando pensión alimenticia y *litis expensas*' ésta no debe ser considerada como una solicitud de alimentos fundada en el artículo 109 del Código Civil, ed. 1930, sino más bien como una moción archivada por una esposa divorciada solicitando que de los bienes de la sociedad de gananciales que existió entre ella y su esposo—bienes que según se alega permanecen en éste caso en su totalidad en poder del marido —se le adelanten o anticipen determinadas cantidades para ella poder sufragar sus necesidades mientras se sustancia el pleito principal sobre liquidación de gananciales, así como para trasladarse del país de su residencia a la Isla de Puerto Rico y para hacer a los abogados que la representan un pago de parte de sus honorarios. (Que esto es así se desprende aun con mayor claridad de una lectura de la moción de reconsideración archivada en 27 de junio de 1947.)

"Por cuanto habiendo considerado la antedicha moción de la demandante, como ya hemos dicho, como una solicitud de anticipo o adelanto de parte de su haber en la disuelta, pero no liquidada, sociedad de gananciales, no es menester que resolvamos si en Puerto Rico una divorciada por la causal de separación—contra quien se ha dictado sentencia de divorcio a virtud de demanda a tal efecto incoada por su esposo, pero considerada de acuerdo con la ley como cónyuge inocente con todos los derechos inherentes a tal condición como consecuencia del divorcio (artículo 96 del Código Civil, ed. 1930, según quedó enmendado por la Ley núm. 62 de 29 de abril de 1942, pág. 583)—tiene o no derecho a percibir los alimentos a que hace referencia el artículo 109 del mismo texto legal. *Cf. Planas* v. *Chambers,* 64 D.P.R. 55, 57.

"Por cuanto si bien es cierto que no existe ley alguna en esta isla que de manera palmaria y taxativa conceda alimentos a una divorciada de los bienes pertenecientes a la sociedad de gananciales que existió entre ella y su anterior consorte, o de las rentas de éstos, no es menos cierto que en armonía con el artículo 1325 del Código Civil, ed. 1930 'de la masa común de bienes se darán alimentos al cónyuge superviviente y a sus hijos mientras se haga la liquidación del caudal inventariado y hasta que se les entregue su haber; pero se les rebajarán de éste, en la parte en que excedan de lo que les hubiese correspondido por razón de frutos o rentas', refiriéndose

dicho artículo tan sólo al cónyuge supérstite debido sin duda a que el mismo fué tomado de España y a que allí no existía el divorcio *a vínculo matrimonii* tal cual lo conocemos en Puerto Rico, por lo que puede colegirse fácilmente que fué un lapsus o inadvertencia legislativos el no hacer mención en dicho artículo, o en otro similar, a la mujer divorciada, fuera o no ésta la cónyuge inocente.

"POR CUANTO aunque es verdad que en la referida moción se solicitaron pensión alimenticia y *litis expensas,* tampoco es menos cierto que de las alegaciones de ella, del contexto adicional de la moción de reconsideración y de la fraseología del artículo 1325, supra, se desprende claramente que lo que la demandante en realidad pedía era un anticipo o adelanto de su haber en la sociedad de gananciales y con cargo a éste, careciendo, desde luego, de importancia el título que se diera a dicha moción. (Véase la Regla 81 (*b*), la que si bien no es aplicable a casos de alimentos (*Vázquez* v. *De Jesús,* 65 D.P.R. 900, 901, nota 1) es siempre de aplicación a acciones civiles ordinarias, de índole similar a la principal de liquidación de sociedad de gananciales establecida por la aquí peticionaria contra los interventores.)

"POR CUANTO bajo estas condiciones fué el deber de la corte inferior declarar sin lugar la cuestión planteádale por los aquí interventores y oír alguna prueba en relación con la existencia o no de bienes pertenecientes a la disuelta sociedad de gananciales, así como respecto a las necesidades de la promovente, y una vez que quedara establecido que existían bienes de la sociedad y que la peticionaria carecía de recursos para su subsistencia, lo procedente era conceder el anticipo solicitado en proporción a la importancia del caudal y a la posición social de los interesados. Manresa, Comentarios al Código Civil, Vol. 9, ed. de 1904, pág. 735.

"POR TANTO, se anulan la resolución dictada por la Corte de Distrito de San Juan en el caso Civil Núm. 4329, Sofía Pérez Segovia v. Cristóbal Puig Albons y María Luisa Puig Pérez, en 24 de junio de 1947 y por ende, la dictada en reconsideración con fecha 29 de julio del mismo año."

También aquí convenimos con el juez de turno. Sólo añadimos que si se leyera literalmente la frase "cónyuge superviviente" hallada en la ley, ésta excluiría de sus disposiciones a una mujer divorciada. Pero estamos justificados en no leer literalmente esta ley específica a la luz de su historia y así evitar destruir la intención manifiesta de

la Legislatura. Véanse *Parrondo* v. *L. Rodríguez & Co.*, 64 D.P.R. 438; *Pueblo* v. *Del Valle*, 60 D.P.R. 184; *Pueblo* v. *López*, 54 D.P.R. 294, 300; *Standard Comercial Tobacco Co., Inc.* v. *Tribunal de Contribuciones*, 68 D.P.R. 897; *Rullán* v. *Buscaglia, et al.*, 168 F.2d 401, resuelto el 14 de junio de 1948.

*La sentencia del juez de turno será confirmada.*

El Juez Asociado Sr. Marrero no intervino.