Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| | | |
|---|---|---|
| ANA ROSA SÁEZ-TORRES, CARLOS KEY Y LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR AMBOS<br><br>Recurridos<br><br>V.<br><br>TRIPLE-S SALUD INC.<br><br>Peticionarios | TA2025CE00607 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: SJ2022CV07002<br><br>Sobre: Sentencia Declaratoria Incumplimiento de Contrato, Daños |

Panel integrado por su presidenta; la Juez Lebrón Nieves, el Juez Pagán Ocasio y la Jueza Álvarez Esnard

*Lebrón Nieves, Juez Ponente*

## RESOLUCIÓN

En San Juan, Puerto Rico, a 20 de noviembre de 2025.

El 14 de octubre de 2025, compareció ante este Tribunal de Apelaciones Triple-S Salud, Inc. (en adelante, Triple-S o parte peticionaria) por medio de *Petición de Certiorari.* Mediante este, nos solicita que revisemos la *Resolución* emitida y notificada el 10 de septiembre de 2025, por el Tribunal de Primera Instancia, Sala de San Juan. En virtud del aludido dictamen, el foro *a quo* declaró Ha Lugar la *Moción de Reconsideración* presentada por la señora Ana Rosa Sáez-Torres, el señor Carlos Key y la Sociedad Legal de Gananciales compuesta por ambos (en adelante, parte recurrida).

Por los motivos que se exponen a continuación, se *deniega* la expedición del *certiorari.*

### I

Los hechos que suscitaron la controversia de epígrafe se remontan a una *Demanda* sobre sentencia declaratoria, incumplimiento de contrato y daños, instada el 5 de agosto de 2022, por la parte recurrida en contra de Triple-S. En esencia, la parte

recurrida sostuvo que, la señora Ana R. Sáez-Torres (en adelante, señora Sáez-Torres) sufría de una situación delicada de salud que requería el uso periódico de múltiples medicamentos. Con el propósito de atender dicha situación, la parte recurrida se encontraba adscrita una cubierta de plan médico con Triple-S conocida como "Plan 25". La parte recurrida, adujo que, pagaba la cantidad de $1,301.90 mensuales respecto a dicha cubierta. De igual manera, acotó que, entre los medicamentos que la señora Sáez-Torres necesitaba tomar se encontraba el medicamento "*Opsumit*", y que, de acuerdo la cubierta ofrecida por Triple-S, se encontraba clasificado como un "medicamento especializado preferido", denominado nivel 4. Explicó que, dicho medicamento es un antihipertensivo pulmonar, costoso y que la cubierta bajo el Plan 25 lo había incluido en todo momento. Añadió que, a lo largo de los meses del año 2019 hasta el 31 de enero de 2021, el costo mensual del medicamento fue prácticamente cubierto por el Plan 25 sin que la parte recurrida tuviese que realizar desembolsos significativos de su peculio. Indicó que, para el 31 de enero de 2021, el costo mensual de dicho medicamento era de $10,107.67.

De las alegaciones de la *Demanda* surge que, dentro del periodo de cubierta del 1 de febrero de 2021 hasta el 31 de enero de 2022, Triple-S modificó la cobertura del Plan 25 para cubrir el setenta por ciento (70%) del costo mensual del referido medicamento y que, le correspondía a la parte recurrida realizar el copago del treinta por ciento (30%) restante. Arguyó que, ese Plan 25 también brindaba el beneficio de que la parte recurrida poseía un límite máximo de copago conocido como "MOOP". Conforme a ello, explicó que, cuando la parte recurrida pagara la cantidad máxima establecida en el "MOOP", Triple-S sería responsable del cien por ciento (100%) del costo mensual del medicamento. De igual manera, indicó que, para el aludido periodo de cubierta, en conjunto al Plan

25, la parte recurrida contaba con una "tarjeta de ayuda al paciente" suministrada por el manufacturero del medicamento, la cual proveía una cantidad de $20,000.00 anuales para costear el medicamento. En su *Demanda*, la parte recurrida esbozó una lista de la forma en la cual se costeó el medicamento durante el periodo del 1 de febrero de 2021 al 31 de enero de 2022.

Así las cosas, en la *Demanda*, la parte recurrida alegó que, mediante carta fechada 29 de diciembre de 2021, Triple-S le notificó acerca del proceso de renovación de su Plan 25, el cual cambió de nombre a "Plan Cobalto Óptimo Plus". De acuerdo a la parte recurrida, dicha carta en específico le indicó que: "Si desea[n] mantener su alternativa actual no tiene que llenar ningún documento. Recibir[á]n su nueva tarjeta del plan en los próximos días." Por motivo de que la parte recurrida tenía interés en mantener su Plan 25 tal como estaba, no cumplimentó ningún documento, según indicado por la referida carta. Sostuvo, además que, como consecuencia de lo anterior, las partes acordaron renovar para el periodo de 2022-2023 la misma cubierta que la parte recurrida tenía en el periodo de 2021-2022. De igual manera, reseñó que, para los meses de febrero, marzo, abril y mayo de 2022, había recibido el medicamento bajo la premisa de que su costo continuaba siendo cubierto en la misma forma que lo fue en el periodo anterior de la póliza. No obstante, según alega la parte recurrida, para junio de 2022, la farmacia encargada de dispensar el medicamento le requirió el pago del cuarenta por ciento (40%) del costo del medicamento, ya que, la tarjeta de ayuda económica provista por el manufacturero había llegado a su límite con las cuatro recetas anteriores. La parte recurrida añadió que, advino en conocimiento que, desde febrero de 2022, el costo mensual del medicamento había sido de $11,207.23 y que Triple-S solo había cubierto el sesenta por ciento (60%) del costo mensual, y el restante cuarenta por ciento

(40%) mensual había sido facturado a la tarjeta de ayuda económica. Ante tal situación, la parte recurrida adujo que, se vio en la obligación de utilizar una tarjeta de crédito para realizar el copago del medicamento en los meses de junio y julio de 2022, lo que totalizaba más de $6,800.

Conforme a las alegaciones de la *Demanda*, el 10 de junio de 2022, la parte recurrida realizó una consulta con Triple-S respecto a dicha situación, donde fue notificada que, cuando renovaron su Plan 25 en febrero 2022, la cubierta no se mantuvo igual a la del periodo anterior, en contravención a lo dispuesto en la carta de 29 de diciembre de 2021. Asimismo, Triple-S le indicó que, para el periodo de cubierta del 1 de febrero de 2022 al 31 de enero de 2023, la parte peticionaria solo cubriría el sesenta por ciento (60%) del costo mensual del medicamento, y le correspondía a la parte recurrida realizar el copago del cuarenta por ciento (40%) restante, a su vez que, había eliminado el MOOP completamente. La parte recurrida aseguró que, previo a renovar su cubierta, Triple-S nunca le informó que al renovar no contaría con el beneficio del MOOP para el gasto de farmacia ni que iba a tener que pagar de su dinero más de $4,400.00 mensuales desde junio de 2022 hasta enero 2023. La parte recurrida expresó que, había renovado la cubierta porque Triple-S le representó que recibiría la misma cubierta médica que tuvo durante el periodo 2021-2022. Alegó, además, que, con la carta de renovación del 29 de diciembre de 2021, Triple-S había hecho la representación contractual de que, la parte recurrida ostentaría los mismos beneficios de su Plan 25, ya que, le había instruido a hacer nada si deseaba mantener la alternativa que en ese momento tenían de plan médico. Conforme a ello, la parte recurrida siguió dichas instrucciones con la intención de mantener la misma cubierta médica que tenían en el periodo 2021-2022. Consecuentemente, detalló que, las partes habían pactado que, en el periodo de 2022-

2023, la parte recurrida tendría la misma cubierta de Plan 25 que tuvo durante el periodo 2021-2022. Por lo cual, en su *Demanda* exigió el cumplimiento específico de dicho acuerdo contractual suscrito por las partes.

Igualmente, por medio de la *Demanda*, la parte recurrida argumentó que, Triple-S tenía la obligación de proveerle los mismos beneficios del Plan 25 que se encontraban vigentes para el periodo 2021-2022, que incluía el pago del medicamento y el MOOP. Así como, la obligación de reembolsarle los gastos incurridos para cubrir los costos del medicamento que debió haber sido cubierto por Triple-S. A tales efectos, le solicitó al foro primario que emitiera una sentencia declaratoria. En la alternativa, solicitó que, el foro *a quo* ordenara la resolución del contrato de seguro médico pactado entre las partes, por vicios del consentimiento, y la devolución de las prestaciones realizadas por las partes. Asimismo, reclamó una partida de daños y perjuicios alegadamente causados por la situación.

Posteriormente, el 14 de septiembre de 2022, la parte peticionaria presentó *Solicitud de Desestimación*. Argumentó que, la reclamación de la parte recurrida era improcedente ya que, de las alegaciones de la *Demanda* no se justificaba la concesión de un remedio. De igual manera, sostuvo que, la parte recurrida fue notificada debidamente del cambio de la cubierta y que, se le proveyó la información de contacto para orientarse sobre su cubierta y beneficios disponibles, previo a toma una decisión en cuanto a la nueva póliza. Finalmente, le solicitó a la primera instancia judicial que desestimara la *Demanda*.

En respuesta, el 19 de septiembre de 2022, la parte recurrida presentó *Oposición a Moción de Desestimación*. En primer lugar, sostuvo que, la moción de desestimación presentada por Triple-S no cumplía con la Regla 10.2(5) de Procedimiento Civil. Aseveró que,

contrario a la posición de Triple-S, la *Demanda* incluía una reclamación que justificaba la concesión de un remedio. Por tanto, le solicitó al foro primario que denegara la moción de desestimación presentada por la parte peticionaria.

Así las cosas, el 14 de agosto de 2025, el Tribunal de Primera Instancia emitió *Sentencia*. En virtud de esta, declaró Ha Lugar la *Moción de Desestimación* presentada por Triple-S y desestimó la *Demanda*.

En desacuerdo, el 27 de agosto de 2025, la parte recurrida instó *Moción de Reconsideración*. Reiteró que, la notificación de Triple-S sobre la renovación de cubierta, no advirtió sobre la eliminación del MOOP y que, por ello, fue una notificación deficiente. Asimismo, entre otras cosas, recalcó que, la *Demanda* exponía una reclamación que justificaba la concesión de un remedio en contra de Triple-S. De igual manera, alegó que, el foro *a quo* consideró hechos que no estaban alegados en la *Demanda*, sin brindarle la oportunidad de defenderse de tales hechos, lo cual constituía una violación al debido proceso de ley. Por último, le solicitó al foro recurrido que reconsiderara la *Sentencia* y dejara sin efecto la desestimación de la *Demanda*.

El 5 de septiembre de 2025, la parte peticionaria instó la *Oposición a "Moción de Reconsideración"*. En esencia, expresó que, había notificado adecuadamente a la parte recurrida respecto al cambio en la cubierta. Sostuvo, además que, la solicitud de reconsideración interpuesta por la parte recurrida no expuso razones que ameritaran que se dejara sin efecto la *Sentencia*. De igual forma, adujo que, el foro *a quo* había actuado correctamente al desestimar la *Demanda*.

Finalmente, el 11 de septiembre de 2025, el foro primario emitió la *Resolución* cuya revisión nos atiene, en la cual dispuso lo siguiente:

Luego de evaluar con detenimiento la moción de reconsideración presentada por la parte demandante en la entrada SUMAC 53 así como la oposición a reconsideración presentada por la parte demandada en la entrada SUMAC 55, el Tribunal declara con lugar la moción de reconsideración presentada por la parte demandante. Por tanto, deja sin efecto la Sentencia emitida el 14 de agosto de 2025 (SUMAC 52) y le ordena a la parte demandada presentar su alegación responsiva dentro del término de 20 días.

Inconforme, el 14 de octubre de 2025, la peticionaria presentó ante este foro revisor el recurso de *certiorari* que nos ocupa, en el cual esgrimió el siguiente señalamiento de error:

ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL RECONSIDERAR SU *SENTENCIA* DEL 14 DE AGOSTO DE 2025 DEBIDO A QUE EN EL EXPEDIENTE OBRAN LOS ELEMENTOS PARA CONSTATAR LA TOTAL CARENCIA DE MÉRITOS DE LA DEMANDA DE EPÍGRAFE Y SU INSUFICIENCIA JURÍDICA A TENOR CON LA REGLA 10.2(5) DE LAS DE PROCEDIMIENTO CIVIL.

El 24 de octubre de 2025, la parte recurrida presentó *Oposición a la Expedición del Recurso de Certiorari.*

Con el beneficio de la comparecencia de las partes, procedemos a resolver.

## II

### A. El Certiorari

El certiorari es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar discrecionalmente una decisión de un tribunal inferior. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194 (2023); *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023); *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021); *Pueblo v. Rivera Montalvo*, 205 DPR 352, 372 (2020)[1]. Ahora bien, tal "discreción no opera en lo abstracto. A esos efectos, la Regla 40 del Reglamento del Tribunal de Apelaciones[2],

---

[1] Véase también, *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 728-729 (2016); *IG Builders et al. v. BBVAPR*, 185 DPR 307, 337-338 (2012); *Pueblo v. Díaz de León*, 176 DPR 913, 917 (2009).

[2] Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, In re Aprob. Enmdas. Reglamento TA, 2025 TSPR 42, pág. __, 215 DPR __ (2025). https://dts.poderjudicial.pr/ts/2025/2025tspr42.pdf.

dispone los criterios que dicho foro deberá considerar, de manera que pueda ejercer sabia y prudentemente su decisión de atender o no las controversias que le son planteadas". (citas omitidas) *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008); *Pueblo v. Rivera Montalvo*, supra, pág. 372; *Torres González v. Zaragoza Meléndez*, supra, pág. 848. La precitada Regla dispone lo siguiente:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de certiorari o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa de los procedimientos en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.[3]

No obstante, "ninguno de los criterios antes expuestos en la Regla 40 del Reglamento del Tribunal de Apelaciones, supra, es determinante, por sí solo, para este ejercicio de jurisdicción, y no constituye una lista exhaustiva". *García v. Padró*, 165 DPR 324, 327 (2005). Por lo que, de los factores esbozados "se deduce que el foro apelativo intermedio evaluará tanto la corrección de la decisión recurrida, así como la etapa del procedimiento en que es presentada; esto, para determinar si es la más apropiada para intervenir y no

---

[3] Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, pág. 59, 215 DPR __ (2025).

ocasionar un fraccionamiento indebido o una dilación injustificada del litigio". *Torres Martínez v. Torres Ghigliotty*, supra, pág. 97.

El certiorari, como recurso extraordinario discrecional, debe ser utilizado con cautela y solamente por razones de peso. *Pérez v. Tribunal de Distrito*, 69 DPR 4, 7 (1948). Este procede cuando no está disponible la apelación u otro recurso que proteja eficaz y rápidamente los derechos del peticionario. *Pueblo v. Tribunal Superior*, 81 DPR 763, 767 (1960). Nuestro Tribunal Supremo ha expresado también que "de ordinario, el tribunal apelativo no intervendrá con el ejercicio de la discreción de los tribunales de instancia, salvo que se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial*". Zorniak Air Servs. v. Cessna Aircraft Co.*, 132 DPR 170, 181 (1992*); Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000).

### B. *Moción de Desestimación*

La Regla 10.2 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2, faculta a la parte contra la cual se presente una alegación en su contra a presentar una moción de desestimación, por los fundamentos siguientes: 1) falta de jurisdicción sobre la materia; 2) falta de jurisdicción sobre la persona; 3) insuficiencia del emplazamiento; 4) insuficiencia del diligenciamiento del emplazamiento; 5) dejar de exponer una reclamación que justifique la concesión de un remedio, y 6) dejar de acumular una parte indispensable.[4] *Inmob. Baleares et al. v. Benabe et al.*, 214 DPR 1109 (2024); *Blassino, Reyes v. Reyes Blassino*, 214 DPR 823 (2024);

---

[4] *Cobra Acquisitions, LLC v. Mun. de Yabucoa et al*, 210 DRP 384 (2022); *Rivera Sanfeliz et al. v. Jta. Dir. FirstBank*, 193 DPR 38, 49 (2015); *Colón Rivera et al. v. ELA,* 189 DPR 1033, 1049 (2013).

*Costas Elena y otros v. Magic Sports y Otros*, 213 DPR 523 (2024); *Díaz Vázquez et al. v. Colón Peña et al.*, 214 DPR 1135 (2024). La precitada regla permite a la parte demandada presentar una moción de desestimación debidamente fundamentada previo a contestar la demanda instada en su contra. *Conde Cruz v. Resto Rodríguez*, 205 DPR 1043 (2020); *Casillas Carrasquillo v. ELA*, 209 DPR 240 (2022).

Asimismo, el Tribunal Supremo de Puerto Rico ha establecido que, al momento de considerar una moción de desestimación, los tribunales están obligados a tomar como ciertos todos los hechos bien alegados en la demanda y, a su vez, considerarlos de la forma más favorable a la parte demandante.[5] *Inmob. Baleares et al. v. Benabe et al.,* supra, pág. 1128; *Blassino, Reyes v. Reyes Blassino,* supra, pág. 833; *Díaz Vázquez et al. v. Colón Peña et al.,* supra, pág. 1150. Es por lo que, para que proceda una moción de desestimación, "tiene que demostrarse de forma certera en ella que el demandante no tiene derecho a remedio alguno bajo cualquier estado de [D]erecho que se pudiere probar en apoyo a su reclamación, aun interpretando la demanda lo más liberalmente a su favor".[6] *Cobra Acquisitions, LLC v. Municipio de Yabucoa*, supra, pág. 396; *Casillas Carrasquillo v. ELA,* supra, pág. 247; *Cruz Pérez v. Roldán Rodríguez,* supra, págs. 267-268; *Díaz Vázquez et al. v. Colón Peña et al.,* supra, pág. 1150. Bajo este criterio, procederá la desestimación de la demanda si aun interpretando la reclamación de forma liberal, no hay remedio alguno disponible en el estado de Derecho. *Blassino, Reyes v. Reyes Blassino*, supra, págs. 833-834.

---

[5] *Cobra Acquisitions, LLC v. Municipio de Yabucoa*, supra, pág. 396; *Casillas Carrasquillo v. ELA*, supra, pág. 247; *Rivera Sanfeliz v. Jta. Dir. FirstBank*, supra, pág. 49; *Cruz Pérez v. Roldán Rodríguez*, 206 DPR 261, 267 (2021); *Colón Rivera et al. v. ELA*, supra, pág. 1049.

[6] *Rivera Sanfeliz v. Jta. Dir. FirstBank*, supra, pág. 49; *Ortiz Matías et al. v. Mora Development*, 187 DPR 649, 654 (2013); *López García v. López García*, 199 DPR 50, 69-70 (2018).

Nuestra más alta Curia ha reiterado que, una demanda no deberá ser desestimada a menos que la razón para solicitar el remedio no proceda bajo supuesto de derecho alguno, ni pueda ser enmendada con el propósito de subsanar cualquier posible deficiencia. *Díaz Vázquez et al. v. Colón Peña et al.,* supra, pág. 1150.

Esbozada la normativa jurídica, procedemos a aplicarla al recurso ante nuestra consideración.

### III

En su único señalamiento de error, la parte peticionaria sostiene que, el foro de primera instancia incidió al reconsiderar la *Sentencia.* Lo anterior, debido a que, a su juicio, en el expediente obran los elementos para constatar la total carencia de méritos de la *Demanda* y su insuficiencia jurídica al amparo de la Regla 10.2(5) de Procedimiento Civil.

Tras evaluar detenidamente el recurso presentado por la parte peticionaria, colegimos que, no procede la expedición del auto solicitado. Los señalamientos de error antes reseñados, por los fundamentos aducidos en la petición, no pueden activar nuestra jurisdicción discrecional en el caso de autos. La decisión recurrida no es manifiestamente errónea y encuentra cómodo asilo en la sana discreción del Tribunal de Primera Instancia.

De igual manera, la parte peticionaria tampoco ha logrado persuadirnos de que nuestra abstención apelativa en este momento y sobre el asunto planteado constituiría un rotundo fracaso a la justicia. Regla 40 del Reglamento del Tribunal de Apelaciones, *supra.*

### IV

Por los fundamentos expuestos, se *deniega* la expedición del recurso de *certiorari.*

Notifíquese.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones